OPINION.
Drake, Ch. J.,
delivered the opinion of the court:
In section 1 of the Act of March 3, 1873 (17 Stat. L., 547, ch. 230), the following provision was adopted:
Those officers on the retired list, and those hereafter retired, who were, or who may he, retired after forty years’ service, or on attaining the age of sixty-two years, in conformity with section one of the act of December, eighteen hundred and sixty-one, and it's amendments, dated June twenty-fifth, eighteen hundred and sixty-four, or those who were or may he retired from incapacity resulting from long and faithful service, from wounds or injuries received in the line of duty, from sickness or exposure therein, shall, after the passage of this act, he entitled to seventy-five per centum of the present sea-pay of the grade or rank which they held at the time of their retirement.
' With a slight change of words, but not of meaning, this is now embodied in section 1588 of the Revised Statutes.
By its terms the claimant was not entitled to the seventy-five per cent, rate of pay; for the .physical incapacity to perform further service at sea, on account of which he had been retired, had not been found to have resulted from long and faithful service, from wounds or injuries received in the line of duty, or from sickness or exposure therein.
Congress, however, passed, April 7,1882, an act for his relief (22 Stat. L., 41, ch. 72), as follows:
That Medical Director John Thomley, United States Navy, he considered as having been retired from active service as a surgeon, and placed on the *116 retired list of officers of tiie Navy, June first, eighteen hundred and sixty-one, on account of physical incapacity originating in the line of duty; and that the accounting officers of the Treasury be, and they are hereby, authorized and directed to allow him the rate of retired pay of the grade in which he was retired, prescribed by section fifteen hundred and eighty-eight, Revised Statutes, for officers so retired; and the said accounting officers are hereby further authorized and directed, in adjusting the account of said John Thornley, to allow and pay to him the difference between the pay he has been allowed as a surgeon on the retired list since the passage of the act apirroved March third, eighteen hundred and seventy-three (section fifteen hundred and eighty-eight, Revised Statutes), and that to which he is entitled under that act as having béen retired as a surgeon for incapacity originating in the line of duty; said sum to be paid out of any money in the Treasury not otherwise appropriated.
The chief mandate of this act, and that which affects the present case, is, that the claimant shall be allowed the rate of retired pay of the grade in which he was retired, prescribed by section 1588 of the Kevised Statutes for officers retired on account of physical incapacity originating in the line of duty. That rate of pay is seventy-five per centum of the sea-pay of the grade or rank which he held at the time of his retirement, as that sea-pay existed March 3,1873, and has since existed.
By the Act of July 15, 1870 (16 Stat. L., 321, 331, ch. 295), and by section 1556 of the Kevised Statutes, the highest pay of surgeons in the Navy, i. e., their sea-pay, was fixed as follows:
1. During the first five years after date of commission, $2,800;
2. During the second five years from such date, $3,200;
3. During the third five years from such date, $^,500;
4. During the fourth five years from such date, $3,700; and
5. After twenty years from such date, $4,200.
The claimant having been retired during the second five years after date of commission, the act for his relief entitled him, at least, to seventy-five per cent, of the sea-pay of a surgeon in that period of his service. This amount he has received for the whole period from March 3,1873, to the time when this suit was brought.
He therefore has no claim unless he is entitled to .longevity pay; that is, the increase of pay which takes place at the end of fixed periods of service in the same grade. At the trial the claimant relied mainly on the recent case of Tyler v. The United States (16 C. Cls. 223, and 105 U. S. R., 244) in support of his right to this pay; but that was a case of an Army officer, and the statute governing it is so different in terms from that in *117 volved in this case that we do not consider that decision applicable here.
The officers of the Navy are divided into two classes — those on the active list, who perform all the duties, bear all the responsibilities, and suffer all the privations attendant on the naval service, at sea or on shore, at home or abroad, in peace or in war, and therefore have higher pay and greater privileges $ and those on the retired list, who have no responsibilities, can have no duties assigned them except in time of war, and have no privations except enforced inaction andreduced pay. Among the privileges of the former is this longevity pay. From the formation of the Navy till 1835 it had no existence, and was then authorized only as to surgeons. (4 ¡Stat. L., 755, ch. 27.)
Down to 1860 it was not allowed to other officers. Men grew old as lieutenants, with no increase of pay from the day they became such till they reached the period of promotion to a higher grade. In that year the longevity pay was extended to captains, commanders, lieutenants, engineers, boatswains, gunners, carpenters, and sailmakers (12 Stat. L., 23, ch. 67), and in 1870 to all grades of officers on the active list, except midshipmen (16 Stat. L., 321, ch. 295); and so it remains to this day.
There was, no doubt, an underlying principle and purpose in the introduction of longevity pay into the Navy. We think it was intended, first, to induce men to enter the Navy and remain in it for life; second, to remove the depressing influence of long periods of service in one grade without an increase of pay; third, to compensate for increased professional knowledge and efficiency in officers, by increasing their pay in advance of promotion. If these views are correct, the whole basis of longevity pay is the officer’s capacity for duty, and his performance of it. In other words, longevity pay is for longevity in actual service. Upon these grounds alone we should consider that longevity pay ought to be confined to officers on the active -list. But it is, in fact, so confined by the very terms of the statute. When it is, in words, given to officers on that list, it is a clear case for the application of the familiar maxim expressio unius est exclusio alterius; and we have no right to resort to presumptions or constructions to extend its benefits to another class of officers, who, whether justly or not, have been withdrawn from the active, and placed on the retired, list, and forbidden to be employed on any duty in time of peace. To in *118 crease their pay every five years would involve tlie incongruity of creating a longevity pay for longevity in doing nothing. In our opinion there is no foundation for the claim that retired officers in the Navy are entitled to longevity pay.
This disposes of the claimant’s case. He does not claim that up to the time of his retirement he was entitled to any higher rate of pay than that allowed to a surgeon on the active list, in the second five years after date of commission, $3,200; and he admits that, since March 3, 1873 he has been paid seventy-five per cent, of that rate. He is entitled to that and no more j and his petition must be dismissed.