## THE STATE OF INDIANA v. DUDLEY.

[No. 21,413. Filed March 16, 1910.]

1. MILITIA.—*Statutes.*—*Liberal Construction.*—Statutes providing for the establishment, discipline, and pay of the army should be liberally construed. p. 635.

2. STATUTES.—*Construction.*—*Words.*—Where the language of a statute is plain, the obvious intent should govern. p. 637.

3. MILITIA.—*Pay of Officers.*—*Longevity.*—*Statutes.*—Section 8490 Burns 1908, Acts 1905, p. 412, §13, providing that each officer of the Indiana National Guard "shall be entitled to pay at the same rates in every respect, as the corresponding grades may at the time be entitled to in the United States army," gives to such Indiana officers the increased pay to which United States officers are entitled on account of length of service. p. 638.

4. ARMY AND NAVY.—*Cadet.*—*When in Service.*—A cadet at West Point is "in the service" within the meaning of the act of congress. p. 639.

5. MILITIA.—*Officers.—When in Service.*—An officer of the Indiana National Guard is in the service of the State so long as he remains on the roll of said guard and holds himself subject to the call of the Governor.  p. 639.

6. MILITIA.—*Officers.—Pay.*—An unmounted captain of the Indiana National Guard is entitled to $5 per day while in actual service, together with ten per cent additional pay for each term (not exceeding four) of five years he has been in the service.  p. 639.

From Superior Court of Marion County (77,294) ; *John L. McMaster, James M. Leathers, Vinson Carter, Clarence E. Weir* and *Pliny W. Bartholomew,* Judges.

Action by Alvin W. Dudley against The State of Indiana. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*James Bingham,* Attorney-General, *W. H. Thompson, E. M. White* and *A. G. Cavins,* for the State.

*Robert W. McBride,* for the appellee.

HADLEY, C. J.—This is an action brought by Alvin W. Dudley, a captain in the Indiana National Guard, against the State of Indiana, to recover what is termed ''longevity'' pay, or, in other words, extra pay for longevity service.   The complaint shows that the appellee received all the pay to which he was entitled as such officer, except said longevity pay, when called into the service of the State by the Governor, at Fontanet, in October, 1907, at a time of public danger.

The only question for decision is, whether the appellee, as an unmounted captain in the Indiana National Guard, is entitled to longevity pay for the service so rendered by him at Fontanet, in October, 1907, and the issue is so formed as properly to present this question.   The superior court allowed the claim of $10.50 as longevity pay.

The pay to which appellee was entitled is regulated by §8490 Burns 1908, Acts 1905, p. 412, §13, which provides that whenever any portion of the Indiana National Guard is called into the service of the State in time of war, insurrection or other public danger, ''each officer shall be entitled to pay at the same rates in every respect, as the corresponding grades may at the time be entitled to in the United States

army, and subsistence.'' The pay of a captain, not mounted, in the regular army during the year 1907 was $1,800 per annum. U. S. Comp. Stat. 1901, §1261. The appellee, therefore, as an unmounted captain in the Indiana National Guard, while in the service of the State, was entitled to pay at the rate of $1,800 per year, or $150 per month, or $5 per day. In addition to the regular pay provided for by §1261, *supra,* it is further provided by U. S. Comp. Stat. 1901, §1262, that ''there shall be allowed and paid to each commissioned officer below the rank of brigadier-general, including chaplains and others having assimilated rank or pay, ten per centum of their current yearly pay for each term of five years of service.'' The total amount of such increased pay for length of service, or longevity, is by U. S. Comp. Stat. 1901, §1263, limited to forty per cent of the yearly pay of the grades.

There is nothing confusing or uncertain about the statute when read in the spirit in which it was adopted. To cultivate patriotism, and induce our young men to assume

1. the dangers incident to the public defense and the suppression of public disorder, the State must be liberal to those who put on the uniform in times of stress. It is unpatriotic and impolitic to invoke the rule of strict construction against soldiers' compensation, which is but nominal at best. We are unwilling to concede that Indiana is behind the national government in lending encouragement and recognition to those it depends upon to preserve the peace.

It is no small matter to become an officer in the Indiana National Guard. It requires much study and preparation to become qualified for the office. The applicant, before he can be commissioned by the Governor, must be able to pass a successful examination by a board of skilled army officers, showing a knowledge of military affairs proportionate to the office to be held, his general knowledge and his fitness for the service. §8453 Burns 1908, Acts 1905, p. 412, §8. The

preparatory knowledge must be acquired at the expense of the time and private business of the applicant. Nor is this all. When an officer is admitted to the service, he assumes a line of duties which are never ended and which become a constant exaction upon his time. The system of instruction of the Indiana National Guard is precisely the same as that of the regular army, "and every officer who fails to qualify himself within a reasonable time for the duties of his position as an instructor of those under his command shall be dismissed for incapacity." §8470 Burns 1908, Acts 1895, p. 102, §37.

Furthermore, it is the duty of all commanders to see that their entire commands are properly instructed in the prescribed drill and discipline, and they shall require officers' drills and schools of instruction. §8471 Burns 1908, Acts 1895, p. 102, §38. So exacting is the statute upon officers of the Indiana National Guard, in respect to all duties required of officers of like grade in the regular army, that "negligence of duty; loss of interest; dilatoriness in making required returns and reports; failure to comply with instructions or frequent unauthorized absence from meetings of command as provided in existing regulations," shall be cause for a dismissal from the guard. §8539 Burns 1908, Acts 1905, p. 412, §18.

A captain, or other commanding officer of a company, becomes personally liable for all arms, accoutrements, equipment and other property issued to his company, belonging to the State and to the United States. So it is that the officer of the Indiana National Guard is not only compelled to qualify himself at his own expense, but he is required to hold himself in readiness to lay down his private business and respond immediately to the call of the Governor. He must also keep himself and his affairs in a state of preparedness to attend camps and schools of instruction, drills, parades, musters, inspections, courts-martials and rifle practice, and any inattention or

neglect thereof will subject him to dismissal from the service. §8539, *supra.* All this he must do without compensation, except when in active service, and without the promise or hope of retired pay, or of pension in case of misfortune. He may easily enough divest himself of all these duties and obligations at any time by resignation.

The officer of the regular army receives full-time pay whether in active service, or waiting in barracks for something to do, and retired pay for life, and pension for disability if he leaves the service.

In defining the object congress had in view in providing extra pay for longevity of service, it was said in the case of *Thornley* v. *United States* (1883), 18 Ct. Cl. 111, 117, and subsequently repeated, in substance, by the United States Supreme Court, that the purpose was (1) to induce men to enter the service and remain there for life; (2) to remove the depressing influence of long periods of service in one grade without an increase of pay, and (3) to compensate for increased professional knowledge and efficiency in officers, by increasing their pay in advance of promotion. Thus, the skill and efficiency that are attainable only by long service were deemed by congress of sufficient importance to justify the granting of additional and graduated pay as an inducement to officers to remain in the army. There can be no less need, and no less wisdom, in giving encouragement to officers of the Indiana National Guard to continue in the service. If the former quits the army, he wilfully surrenders a comfortable support in his old age, and there is cause for hesitation. If the latter quits, he gives up nothing but care, responsibility and exactions upon his time.

But, far more important to this inquiry than the propriety and prudence of making the office attractive, is the legislative expression. When the meaning of a statute is plain, 2. it is the duty of the court to define it according to its obvious terms. Here it is again. "Each officer [of

the Indiana National Guard] shall be entitled to pay
3. at the same rates in every respect, as the corresponding grades may at the time be entitled to in the United States army," §8490, *supra*. Mark, "at the same rates [not rate] in every respect as the corresponding grades [not grade] may at the time be entitled to in the United States army." The plural implies more than one.

The Attorney-General makes some effort to prove that, under §8490, *supra,* the pay of a captain of the Indiana National Guard is limited to the current pay of an officer of like grade in the regular army, his contention being that longevity of service is not a grade, and that the silence of the statute as to longevity pay must be accepted as its denial. The argument is ingenious, but fallacious. It is true that longevity of service is not of itself a grade, but it may, when associated with other like terms, be classified as a grade or class. Two captains of the same length of service, and whose commissions are of the same date, are of the same grades, both as to longevity of service and to official station. Both those grades are necessary factors in determining the pay to which the army officer is entitled. His official station or grade has attached to it a fixed and regular pay. Each term of five years, not exceeding four, he has been continuously in the service has attached to it an additional ten per cent of the regular pay. The aggregate of the two items that proceed from the two grades makes up the total amount of compensation due the officer. The pay shall be at the same rates "in every respect." It is evident from this language that there was in the legislative mind more than one respect in which the officer of the Indiana National Guard might be entitled to pay. There is much significance in the term "in every respect." It means there must be denied to the Indiana National Guard officers no source of compensation that is accorded to like officers of the regular army. In short, it is clear that the legislature intended to put the officers of the Indiana National Guard on precisely the same foot-

ing, with respect to pay, as their brother officers in the regular army.

There is nothing in the claim of the Attorney-General, that the state officers do not have "terms of service," in the sense applied to army officers whose service is continuous. It is held that the time spent as a cadet in the military academy at West Point is "in the service" within the meaning of the act of congress, and may be counted as a part of the first term of five years of service. *United States* v. *Morton* (1884), 112 U. S. 1, 17, 5 Sup. Ct. 1, 28 L. Ed. 613; *United States* v. *Watson* (1889), 130 U. S. 80, 9 Sup. Ct. 430, 32 L. Ed. 852. Also, the time lived on the retired list of the army may likewise be counted in determining longevity pay. *United States* v. *Tyler* (1881), 105 U. S. 244, 26 L. Ed. 985; *United States* v. *Morton, supra.*

The state officer, so long as he remains on the roll of the state guard, and performs the duties required of him by his rank, and holds himself subject to the call of the Governor, is likewise in the service of the State. The difference in the two officers, with respect to pay, is that the federal officer is entitled to pay for straight time, while the state officer by state law is entitled to pay for time spent in actual service only, and this applies to his allowance for longevity of service as well as to his regular per diem while under the call of the Governor.

To illustrate: Captain Dudley, the appellee, was in the active service of the State, at Fontanet, seven days, for which he was entitled to and did receive $5 per day, or $35. He had been in the service of the State, as a member of the Indiana National Guard, for three full terms of five years each, or fifteen years, which entitled him to additional, or longevity, pay equal to thirty per cent of his regular per diem, or $1.50 per day, or, in an aggregate, $6.50 per day. It is shown that there was paid to appellee $10.50 less than was due to him.

Judgment affirmed.