## HYLAND ET AL. v. ROCHELLE.

[No. 22,047. Filed February 13, 1913. Rehearing denied June 17, 1913.]

1. STATUTES.—*Construction.*—*Legislative Intent.*—In construing a statute the intent of the legislature is the object sought, and in determining such intent, the entire statute, as well as acts in *pari materia*, whether repealed or not, and whether passed before or after the act in question, will be considered. p. 676.

2. STATUTES.—*Construction.*—*Meaning of Words.*—Words used in a statute are to be taken in their ordinary and popular meaning where there is nothing in the act itself to indicate a usage in a particular or technical sense. p. 677.

3. STATUTES.—*Construction.*—*Legislative Intent.*—*Duty of Courts.* —Where the meaning of a statute is plain, the court should define it according to its obvious terms. p. 677.

4. STATUTES.—*Construction.*—*Determination of Legislative Intent.* —Where a statute is doubtful or uncertain, the circumstances under which it was enacted, other statutes upon the same subject, regardless of when they were enacted or whether they are in force, the history of the country, the condition of affairs, the mischief sought to be remedied, and the object sought to be attained, may all be looked to in ascertaining the legislative intent. p. 677.

5.  STATUTES.—*Construction.—Grant of Principal Power.—Implications.*—The grant of a principal power carries an implied grant of all powers necessary to carry out and complete whatever is authorized by the principal power. p. 678.
6.  STATUTES. — *Construction. — Legislative Intent.* — A matter or thing within the intention of the legislature is the same in effect as if it were within the express letter of the statute. p. 678.
7.  STATUTES.—*Construction.—Meaning of Words.*—It is only when it will manifestly defeat the legislative intent that the words of a statute are not taken in their plain, ordinary and usual sense. p. 678.
8.  EXTRADITION.—*Identification of Fugitives.—Statutes.—Construction.—"Judge of this State."*—Under §§8840, 8841, 8842 Burns 1908, Acts 1905 p. 219, §§215, 216, 217, vesting the judicial power of every city of the first, second, third and fourth classes in a city court, making such court a court of record, providing for the election of judges of such courts and defining their jurisdiction, etc., the judge of such court is a "judge of this State" within the meaning of §1893 Burns 1908, Acts 1905 p. 584, §26, relating to fugitives from justice, and requiring the Governor on demand of the executive of another state for the surrender of a fugitive to issue his warrant commanding the fugitive to be apprehended and brought before the circuit, superior or criminal court or judge of this State, etc., and has jurisdiction to determine the question of the identity of a fugitive. p. 678.
9.  CONSTITUTIONAL LAW.—*Extradition Statute.*—That the extradition statute of this state is constitutional, see dissenting opinion by Cox, J., p. 691.

From Marion Circuit Court (20,337) ; *Charles Remster* Judge.

Application for a writ of *habeas corpus* by Louis Rochelle against Martin J. Hyland and others. From a judgment for the applicant, the defendants appeal. *Reversed.*

*Joseph B. Kealing, Charles E. Averill, Roby & Watson, Baker & Daniels* and *Rowland Evans,* for appellants.
*Ira M. Holmes* and *Henry Seyfried,* for appellee.

SPENCER, J.—The appellee made application by a duly verified petition to the Marion Circuit Court for a writ of *habeas corpus,* alleging he was unlawfully restrained of his liberty by the appellants. Motion to quash the writ was made by appellants, Hyland et al., overruled as to all except

Collins, sustained as to him. Refusing to plead further, judgment against appellants, Hyland, Holtz and Cairl, that appellee be discharged from their custody, etc. The error relied on for reversal is the overruling of appellants' separate motions to quash the writ.

Appellee avers that appellants Martin J. Hyland, Superintendent of Police, William A. Holtz, Captain of Detectives of the city of Indianapolis, apprehended him, the appellee, upon a warrant issued by Thomas R. Marshall, Governor of the State of Indiana, which warrant was issued by such governor upon the presentation to him of a requisition issued by Judson Harmon, Governor of the state of Ohio, which was a requisition for the issuance of a writ and warrant for the apprehension of the appellee, and for his delivery as a fugitive from justice, to one of the appellants, Emmet C. Cairl, as the agent of the state of Ohio, and that the said Cairl was duly appointed and commissioned to receive and convey the appellee to the county of Lucas, in the state of Ohio, as such fugitive; that he was taken before appellant, James A. Collins, judge of the City Court of Indianapolis; that the judge of the City Court of the City of Indianapolis illegally, wrongfully, and oppressively pretended to examine into the question of the identity of the appellee without authority and jurisdiction so to do, did find he was the person named in the writ and warrant and remanded and delivered him over to the appellant, Emmet C. Cairl, agent of the state of Ohio.

Was the hearing before James A. Collins, judge of the City Court of Indianapolis authorized by the statute of the State of Indiana? If so, then the apprehension and detention of appellee was regular and appellants' separate motions to quash the writ should have been sustained. Section 1893 Burns 1908, Acts 1905 p. 584, §26, approved March 9, 1905, relating to fugitives from justice, reads: "Upon the demand of the executive authority of any state or territory

of the United States upon the governor of this state, to surrender any fugitive from justice from such state or territory, pursuant to the constitution and laws of the United States, he shall issue his warrant, reciting the fact of such demand and the charge upon which it is based, with the time and place of the alleged commission of the offense, directed generally to any sheriff or constable of any county of this state, commanding him to apprehend such fugitive and bring him before the *circuit, superior or criminal court or judge of this state* nearest or most convenient of access to the place at which the arrest may be made; and such warrant may be executed by any sheriff or constable in this state, in his own county or in any other county in this state.'' This section of the statute contains the words, *''or judge of this state.''* Do these words include judges of city courts and are judges of city courts judges of this State within the meaning of the above section? The lower court decided this case upon the theory that the judge of the City Court of the City of Indianapolis within this statute was not a judge of this State.

The office of judge of the city court was created by an act approved March 6, 1905, Acts 1905 p. 219, §215, §8840 Burns 1908. At the same session of the General Assembly of this State and three days prior thereto the above section of the statute was enacted. Section 215, Acts 1905 p. 219, §8840 Burns 1908 reads: ''The judicial power of every city of the first, second, third and fourth classes shall be vested in a city court. The officers thereof shall be a judge, a clerk and a bailiff, * * *. Such court shall be a court of record, and all its judgments, decrees, orders and proceedings, shall have the same force and effect as those of the circuit court, except that no judgment shall be a lien on real estate otherwise than as provided by taking a transcript of such judgment and filing the same in the office of the clerk of the circuit court; and such judgment shall then be enforced in the same manner as in case of liens by transcript from justices of the peace in similar cases.'' Section 216, Acts

1905 p. 219, §8841 Burns 1908 reads: ''The city judge shall be elected by the legal voters of such city, at the same time and in the same manner as the other city officers are elected, for the term of four years and until his successor is elected and qualified. * * * Before entering upon the discharge of his duties he shall execute a bond, payable to such city in the penal sum of five thousand dollars, with good and sufficient surety, to be approved by the mayor and filed in the office of the city controller, conditioned for the faithful discharge of the duties of his office. He shall hold daily sessions of the city court, Sundays excepted, at a place to be provided and designated by the common council. He shall have and exercise within the county in which said city is located, the powers and jurisdictions now or hereafter conferred upon justices of the peace in all cases of crimes and misdemeanors, except as otherwise herein provided * * * He shall have original concurrent jurisdiction with the circuit court or criminal court in all cases of petit larceny and all other violations of the laws of the state where the penalty provided therefor cannot exceed a fine of five hundred dollars and imprisonment in the jail or workhouse not exceeding six months, or either or both.'' ''Such judge shall have full power and authority to make and adopt rules and regulations for conducting the business of such court not repugnant to the laws of this state, and shall have all powers incident to a court of record in relation to the attendance of witnesses, the punishment of contempts, the enforcement of its orders and the issuing of commissions for taking depositions in cases pending in such court. He shall have full authority to administer oaths and to give all necessary certificates for the authentication of the records and proceedings of such court. In the matter of changes of venue and other matters relating to the trial of any person charged with the violation of any law of this state, or of any ordinance of such city, such court shall be governed, so far as may be, by the law, rules, practice and pleadings

in criminal and circuit courts, except where herein otherwise provided". §217, Acts 1905 p. 219, §8842 Burns 1908. Section 1, Art. 7, of the Constitution of Indiana, provides, "The judicial power of the state shall be vested in a Supreme Court, in Circuit Courts, and in such other courts as the General Assembly may establish". Section 2, Art. 4, Constitution of United States, reads: "A person charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime."

In construing a statute the intent of the legislature is the object sought, and in determining such intent, the entire statute, as well as other acts *in pari materia*, whether 1. repealed or not, and whether passed before or after the act in question, will be considered. *Johnson* v. *City of Indianapolis* (1910), 174 Ind. 691, 699, 93 N. E. 17. Guided by this rule let us proceed to examine the several acts enacted by the Indiana legislature concerning the apprehension of fugitives from justice from other states. The act approved January 22, 1824, R. S. 1824, chap. 46, p. 219, was the first law enacted on this question. It reads in part, "That if any person shall commit any crime in any of the United States or the territories thereof, and shall flee into this state, it shall be lawful for any judge of the supreme or circuit court, or justice of the peace, within this state, on the oath or affirmation of any person charging such fugitive with a crime, to issue his warrant, and cause such fugitive to be arrested and brought before him." This act further provides for the removal of the fugitive if found guilty. This act remained in force and unchanged until 1867, when the legislature, by act approved March 8, 1867, amended to read in part, "Section 1. * * * and bring him before the circuit or common pleas judge of this State who may be nearest or convenient of access to the place at

which the arrest may be made." Acts 1867 p. 126. Section 26, Acts 1881 (s. s.) p. 114, §1599 R. S. 1881, followed the language of §1, Acts 1867, *supra,* except the clause set out above was changed to read, "the circuit or criminal judge of this State who may be nearest or most convenient of access," etc. This section remained in force until 1905, when the legislature changed it to read as set out, *supra.* Acts 1905 p. 584, §26, §1893 Burns 1908, viz., *"Apprehend such fugitive and bring him before the circuit, superior or criminal court or judge of this state nearest or most convenient of access to the place at which the arrest may be made."*

What was the legislative intent of the phrase, *"or judge of this state", etc?* "One of the cardinal rules in the construction of statutes is, that where there is nothing in the act itself to indicate that a word, or phrase, is used in a particular, or technical, sense, it is to be taken or accepted in its ordinary and popular meaning." *Massey* v. *Dunlap* (1896), 146 Ind. 350, 357, 44 N. E. 641. See, also, *Starr* v. *Board, etc.* (1907), 40 Ind. App. 7, 9, 76 N. E. 1025, 79 N. E. 390; *Haggerty* v. *Wagner* (1897), 148 Ind. 625, 48 N. E. 366, 39 L. R. A. 384; *Seiler* v. *State, ex rel.* (1903), 160 Ind. 605, 617, 65 N. E. 922, 66 N. E. 946, 67 N. E. 448. "When the meaning of a statute is plain, it is the duty of the court to define it according to its obvious terms." *State* v. *Dudley* (1910), 173 Ind. 633, 637, 91 N. E. 228. "If the statute is doubtful or uncertain, the circumstances under which it is enacted, other statutes, if there are any upon the same subject, whether passed before or after the statute under consideration, whether in force or not, the history of the country, the condition of affairs, the mischief sought to be remedied, and the object sought to be attained, may all be looked to in ascertaining the legislative intent." *Thorn* v. *Silver* (1910), 174 Ind. 504, 516, 89 N. E. 943, 92 N. E. 161, and cases cited.

"The rule is elementary that the grant of a principal power carries with it by implication all other powers necessary to carry out the principal power conferred, and thereby to make effectual and complete whatever is authorized to be done by the principal or general authority granted." *State, ex rel.* v. *Barr* (1910), 173 Ind. 446, 450, 88 N. E. 604. See, also, *Boyce* v. *Tuhey* (1904), 163 Ind. 202, 211, 70 N. E. 531; *Studabaker* v. *Studabaker* (1899), 152 Ind. 89, 51 N. E. 933; *Leeds* v. *Defrees* (1901), 157 Ind. 392, 397, 61 N. E. 930. "A matter or thing within the intention of the makers of the law is the same in effect as if it were within its express letter." *Conn* v. *Board, etc.* (1898), 151 Ind. 517, 525, 51 N. E. 1062. It is only when it will manifestly defeat the legislative intent that the words of the statute are not taken in their plain, ordinary, and usual sense. *Massey* v. *Dunlap, supra; State, ex rel.,* v. *Barr, supra.* At the same session of the legislature during which this change was made in the above act, an act was passed concerning municipal corporations, Acts 1905 p. 219, approved March 6, 1905, therein creating the office of "City Judge," and providing for his election, duties, qualifications, jurisdiction, etc., for cities of the first, second, and third classes. As seen from the sections of this act, *supra,* he was given certain jurisdiction concurrent with that of the circuit or criminal courts. Was it the intention of the legislature by amending the act concerning fugitives from justice to include city judges and city courts, just created, by the phrase, *"or judge of this state"?* Appellee insists that the clause, "bring him before the circuit, superior or criminal court or judge of this state nearest or most convenient of access to the place at which the arrest may be made," should be taken as if it read, "or judge thereof nearest," etc. We are not able to so read it. Had the legislature desired to so limit the language, it could easily have said, "or judge thereof nearest," etc. It seems to us the language used does

not require construction, it being, "or judge of this state nearest," etc. The intention of the legislature as expressed by this enactment was to provide a method of identification of an alleged fugitive from justice by the judge of a court. In the act of 1905, for the first time provision was made for the identification of an alleged fugitive to be made by a court. All the various acts of the legislature of this State prior thereto upon this subject, required the identification to be made before a single judge. The act of the judge in such matter is the fulfillment of a statutory requirement designed by the legislature to carry out the executive authority of the State by which only can extradition take place and the language used by the General Assembly should be taken as written.

The appellee earnestly contends that the case of *State, ex rel.*, v. *Gerdink* (1909), 173 Ind. 245, 90 N. E. 70, is decisive of this case, wherein this court held that §8845 Burns 1908, Acts 1905 p. 219, §218 was not repugnant to article 5, §18, of our State Constitution. As we read *State, ex rel.*, v. *Gerdink, supra*, it holds that the legislature has the authority to designate the agency that should fill vacancies in the office of city judge, etc. It seems very clear to us that within the meaning of this statute, the judge of the City Court of the City of Indianapolis, is a judge of the State and that the following authorities place the matter beyond controversy. *Waldo* v. *Wallace* (1859), 12 Ind. 569; *Baltimore, etc., R. Co.* v. *Town of Whiting* (1903), 161 Ind. 228, 68 N. E. 266; *State, ex rel.*, v. *Berghoff* (1902), 158 Ind. 349, 63 N. E. 717; *Gulick* v. *New* (1860), 14 Ind. 93, 104, 77 Am. Dec. 49. This view of the case makes it unnecessary to take up the question presented by appellants as to the constitutionality of §§1893, 1894 Burns 1908, Acts 1905 p. 584, §§26, 27.

The judgment is reversed with instructions to sustain the motion to quash the writ of *habeas corpus,* and to further proceed therewith not inconsistent herewith

## Concurring Opinion.

Myers, C. J.—I wish to state additional grounds for my concurrence in the prevailing opinion. The act of 1897 (Acts 1897 p. 38), first brought into the statute law of this State the sections which now appear as §§33, 41, of the Acts 1905 p. 584, §§1900-1908 Burns 1908. The prior acts had restricted the examining officer to judges of supreme, circuit common pleas or criminal courts and justices of the peace, and the prior acts had also been restricted to cases of arrest upon warrant of the governor. The act of 1897, provided for the apprehension upon complaint in writing of any person within this State, charged with an offense committed in another state or territory, and liable to be delivered over upon demand of the governor thereof, and empowered any judge or justice of the peace, authorized to issue warrants in criminal cases, to issue a warrant and cause the apprehension of the alleged fugitive and to cause him to be brought before him "or any other judge or justice of the peace" who should examine whether the complaint was true, and if he so found, to recognize him under bond to appear before such judge or justice at a future day, allowing time for obtaining the warrant of the governor, except that in case of treason or murder, he shall be committed. The judge or justice is then to notify the governor, and like proceedings are to be had as in case of an original demand by such foreign governor, and the issuance of a warrant by the governor of this State, etc. This was clearly a remedial statute in the interest of justice.

When we come to the act of 1905, it embodies these sections of the act of 1897, except it enlarges the warrant issuing power to include a "court, judge or justice of the peace" in each instance where it had previously read "any judge or justice of the peace," but when we come to the portion of the act of 1905 as to examining the accused person for the purpose of identification, and transferring him to the custody

of the foreign agent, we find the power committed for the first time, to the ''circuit, superior or criminal court, or judge of this state, nearest,'' etc. The contention of appellee is that the phrase should be read ''or judge thereof,'' as implying action by the judges of circuit, superior or criminal courts in vacation, or at times when the court is not in session. This may be a permissive construction, but with the statutes authorizing ''any court, judge or justice of the peace'' to apprehend the fugitive and determine as to the question whether there is reason to believe a complaint to be true, charging crime in another jurisdiction, and that the accused has fled and is liable to be delivered on demand of a foreign governor, and may be held or recognized if the offense is not treason or murder, that the statute as it now exists is remedial in its nature and should receive a fairly liberal construction. It is not adverse to, or subversive of any right of the individual, guaranteed by any constitution, or by the common law, but a purely administrative act in the nature of a police regulation, as between the states, under and in aid of the constitutional provision for the extradition between the states, of those charged with crimes. Even a statute ordinarily calling for strict construction should not be so construed as to destroy its manifest purpose and intent. It is true that the power of examination in this particular is committed to a ''circuit, superior or criminal court, or judge of this State,'' but the matter of identification of the party is not nearly so important, at least generally, as the determination before the warrant of the governor issues, whether there is reasonable cause to believe one guilty of a crime, or that he is a fugitive, and the power to make that finding is committed to ''any court, judge or justice of the peace, authorized to issue warrants,'' and is a part of the same statute. If it be said that it was an attempt to raise the rank of the authority to examine as to identity, in order that one should not be carried from this jurisdiction, the same direction is given to a ''court'' as to a ''judge'' under

§32, Acts 1905 p. 584, §1899 Burns 1908, to see to it that no "resident or citizen" of this State shall be delivered up, where it appears that such "citizen or inhabitant" was in this State, and not in the state whence he is alleged to have fled, at the time of the alleged commission of the offense, so that it is not as to that particular a question as to whom shall he be tried by, but the same prohibition, if valid, extends to every examining court or judge.

Usually, where power is conferred upon a judge of a court to act when the court is not in session, there is added "or the judge thereof," or some such phrase, and it would probably be so read in the absence of the phrase, if the contents did not point by analogy, or reason to some other construction, as the legislative intention. But when the prior and contemporaneous legislation, and the reason inhering in the matter itself, and the absence of reason for and language restricting it, it appears to me that the language "or judge of this state" was intentionally used, as applying to judges of courts of record.

There does not seem to me, to be any other good reason for the use of the words "judge of this state". The word "judge" has as well a defined meaning in legal nomenclature, and is as well understood as the word "court," and even as to the latter it would not in my judgment in view of that fact and former legislation, have been necessary to have used the words "circuit, superior or criminal", in the act, in order that we should understand what was intended, and in this statute it means "any judge of this state"; that is, any public officer whose function it is to declare the law, to admission to administer justice in a court of law, under prescribed forms and legal methods.

It is suggested that such holding would authorize a justice of the Supreme or Appellate Court to sit as an examiner, while the court itself could not. It is sufficient to point out that from 1824 until 1867 judges of the supreme, circuit and other courts, and justices of the peace, either so desig-

nated because it was a remedial act, or because they were not recognized as judges, might do just that thing, where the court itself could not. For the same reason, because they are not judges or courts they are excluded by the act of 1905.

Appellee's position may be an argument of expediency, but we are dealing with a concededly legislative power, and the remedy if one is needed is with the legislature, and it seems to me that the legislature has indicated its intention, and that the court below was in error.

## DISSENTING OPINION.

Cox, J.—Ordinarily the futility of a dissenting opinion is so apparent that I am sometimes led to refrain from dissent even though my mind fails to give free and unhampered concurrence in all respects to the prevailing opinion. In the case before us, however, I am so sensibly impressed with a conviction that the court has fallen into error that I am constrained to give some reasons for the conclusion entertained by me that the judgment of the trial court should be affirmed.

Appellee was in custody as a fugitive from justice by due and orderly procedure up to and including the issuing of the warrant of the governor of this State commanding the apprehension of appellee and his delivery to the agent of the state of Ohio which was demanding him. His application for the writ of *habeas corpus* was based on irregularities occurring after the warrant of the governor for the arrest and delivery of appellee to the agent of the demanding state to appellants, Hyland and Holtz, who were officers with competent authority to execute it. These officers took appellee into custody upon the warrant of the governor and took him before the judge of the City Court of the City of Indianapolis for examination into the question of his proper identity. That judge ordered him delivered to the appellant Cairl, the agent of the demanding state and he was being

held in the city prison of the City of Indianapolis by appellants, Hyland and Holtz, pending opportunity for his removal to the state of Ohio by appellant, Cairl, when appellee presented to the trial court his petition for a writ of *habeas corpus*. This writ was effective, that court finding that appellee was being unlawfully held, and he was discharged from the custody of appellants.

This action of the trial court was taken upon the theory that the law of this State gives to one charged with being a fugitive from the justice of a sister state a positive right to a hearing touching his identity with the one charged with the crime before a tribunal designated by our statute, and that this law had not been complied with in that the judge of the city court was not clothed by the statute with authority to hear and determine such question. From this the conclusion followed that the order of that judge for the delivery of appellee to the agent of the state of Ohio was void and that appellee was being unlawfully deprived of his liberty.

If the provisions of our extradition statute did not empower the judge of the city court to examine into the identity of appellee with the fugitive sought to be extradited and thereupon order him, when satisfied of his proper identity, delivered into the hands of the state of Ohio, then the judgment of the circuit court in this case was correct unless those provisions of our statute which require such an inquiry before the removal of an alleged fugitive are invalid.

The proper interpretation of the provision found in §26 of the act of 1905 (Acts 1905 p. 584, §1893 Burns 1908), that the officer executing the governor's warrant shall "apprehend such fugitive and bring him before the circuit, superior or criminal court or judge of this state nearest and most convenient of access to the place at which the arrest may be made," for determination of the question of his identity as the fugitive demanded as provided by the following section, together with the determination of the validity of these provisions of our statute requiring identification in this man-

ner before removal are, therefore, the two vital questions presented to this court for solution.

Much of the very able briefs of the distinguished counsel for appellants is addressed to an effort to establish the status of the judge of the City Court of the City of Indianapolis as a judge of this State and in a general sense it is at once manifest that he is. He is the judge of a court which touches vitally the lives of many people in their relation to the laws of the State and as such judge his duties are onerous and important. But it is well to remember that the court over which he presides is one of limited jurisdiction and has no authority to issue writs of *habeas corpus* as each of the three courts specifically named have. This fact is not wholly insignificant in the search for the legislative intention. That the legislature might have given him the authority claimed for him is sure. It does not, however, follow that he is among those judges of the state vested with authority to examine into the question of the identity of an alleged fugitive from justice within the meaning of the words as used in our extradition statute. If the words "judge of this state" are to be construed to be given their very broadest meaning, unlimited save only that they must obviously be taken to mean the judge *of a court* of this State, then it would readily follow that they are inclusive of the judge of the City Court of the City of Indianapolis.

Counsel earnestly contend that the words "judge of this State" bear a meaning plain and unambiguous and are not subject therefore to interpretation. And at the same time counsel are attempting to sever these words from a part of their context to which they are vitally bound and are asking that they be given a construction that is far from obvious. Left in association with the words "circuit, superior or criminal court" where the lawmakers placed them and it is at once evident that the construction which counsel themselves are asking shall be put upon them is strained. It will be agreed at once that it is a very well-settled rule that so long as the

language in a statute is unambiguous, there is no room for construction and a departure from its natural meaning is not justified but it is the plain duty of the court to give it force and effect as it is written.

Where, however, more than one meaning may be extracted from the words used in a statute without doing violence to its terms an ambiguity may be said to be present and it becomes the province and the duty of courts to resort to construction to ascertain, if may be, the intention of the legislature.   36 Cyc. 1114, 1118.   It appearing that the language involved is a proper subject for interpretation, the intention of the lawmaking power must be sought in reason aided by the accepted rules for the construction and interpretation of statutes.   Suppose the words ''or judge'' had not been used in the section under consideration.   The provision would then have read that the officer charged with the duty of executing the warrant shall ''apprehend such fugitive and bring him before the circuit, superior or criminal court of this state nearest and most convenient of access to the place at which the arrest may be made.''   The words in that case would convey a meaning so clear that the dullest mind could not misconceive their certain import.   Every lawyer and perhaps most laymen would at once agree that the alleged fugitive must be taken before either one of the three courts named which was nearest and most convenient of access then sitting in term.   No one would claim that this court, or the Appellate Court or any probate court, or any juvenile court, or any city court could qualify as a proper tribunal for the purpose under the words used.   The words used would bestow authority only upon the circuit, superior and criminal courts and on these only in term time, for the rule is that where the law authorizes or contemplates the doing of an act by a court it is and must be understood that the court in term time may or must do it, and the judge in vacation cannot, unless the power is expressly conferred upon him by law.   *Ferger* v. *Wesler* (1871), 35 Ind. 53;

*Newman* v. *Hammond* (1874), 46 Ind. 119; *Backer* v. *Eble* (1896), 144 Ind. 287, 43 N. E. 233; *State* v. *Hindman* (1903), 159 Ind. 586, 590, 65 N. E. 911.

The power which a judge may exercise in vacation is only such special statutory power as is prescribed. If express authority cannot be pointed to in the statute it is assumed that it does not exist. *Taylor* v. *Moffatt* (1830), 2 Blackf. 305; *Pressley* v. *Harrison* (1885), 102 Ind. 14, 1 N. E. 188.

It is known that the extradition statute was framed, as a part of our existing criminal code, by a commission of lawyers who had had judicial experience, one of them as a member of this court. The archives of the State show that the language under consideration was the product of their labor. The legislature enacted it as they had prepared it. They of course knew that, under the rules of law just above stated, the bestowal of authority upon the circuit, superior and criminal courts to examine into the question of the identity of an alleged fugitive from justice would give no power to the judges of such courts in vacation. The convenience, if not indeed the necessity, of such authority to be possessed by the judges in vacation is easily apparent. The courts are not always sitting in term while the judges may usually be at hand in vacation. So interpolating the words ''or judge'' after the words ''circuit, superior or criminal court,'' and the intention of the legislature at once becomes manifest to vest authority to hear and determine the question in the courts named if sitting in term or a judge of either of them in vacation. This construction takes nothing from the statute and adds nothing to it. It gives proper and natural effect to every word used as just interpretation requires when possible. For it is the rule that a statute must be construed as a whole and every word in it made effective if possible. Potter's Dwarris, Statutes 194; *Hutchen* v. *Niblo* (1836), 4 Blackf. 148; *Stayton* v. *Hulings* (1855), 7 Ind. 144; *Sutton* v. *Parker* (1879), 65 Ind. 536, 542; *Cleveland, etc., R. Co.* v. *Backus* (1893), 133 Ind. 513, 526,

33 N. E. 421, 18 L. R. A. 729; affirmed, *Cleveland, etc., R. Co.* v. *Backus* (1894), 154 U. S. 439, 14 Sup. Ct. 1122, 38 L. Ed. 1041; *State* v. *Weller* (1908), 171 Ind. 53, 85 N. E. 761.

"The good expositor," says Lord Coke, "makes every sentence have its operation to suppress all the mischiefs; he gives effect to every word in the statute; he does not construe it so that anything should be vain and superfluous, nor yet make exposition against express words, * * * but so expounds it, that one part of the act may agree with the other, and all may stand together." Case of Leases, 5 Rep. 6.

"The framers of law do not weigh only the force of single words, as philologists and critics, but of whole clauses and designated objects, as statesmen and practical reasoners. * * * The peculiar sense in which a word is used in any section is to be determined by the context." Potter's Dwarris. Statutes 196.

It is not permissible to suppose that the framers of the statute and the legislature used the words "circuit, superior or criminal court" with no purpose or meaning. There is no authority for lifting the words "or judge of this state" out of the statute, setting them alone before us and saying, "Behold, how simple they are, how very clear and single and unmistakable is their meaning." On the contrary, it is positively forbidden, as we have seen. They must be read in the lumination afforded by the purview of the act and their context. The first would clearly require a limitation of the word "judge" to "a judge of a court of this State" for the absurdity of giving the word "judge" the very broadest and most inclusive meaning which may be imported by it is baldly palpable. Considered apart from the preceding words designating certain courts, and still the words "judge of this state" cannot be given their broadest popular meaning for there be judges of horse races and of fine poultry and of many other material and profane things

in the State as well as judges of law. They must be given their legal meaning. The word "judge" has a well known and definite meaning apart from its legal meaning. In the second place, viewing the word in the light of the context, of its associated words, it is apparent it must take the further limitation indicated above, that is, a judge of one of the three courts specifically designated in that part of the provision immediately preceding it. In the case of *State* v. *Lowry* (1906), 166 Ind. 372, 392, 77 N. E. 728, 4 L. R. A. (N. S.) 528, 9 Ann. Cas. 350, the rule applicable here is considered, and various authoritative statements of the rule set out. "One of the maxims of the law which there is frequent occasion to employ in the construction of statutes is that of *noscitur a sociis*. It is known from its associates or associations. As stated by Maxwell: 'When two or more words, susceptible of analogous meaning, are coupled together, *noscuntur a sociis*, they are understood to be used in their cognate sense. They take, as it were, their color from each other; that is, the more general is restricted to a sense analogous to the less general.' Maxwell, Interp. of Stat. (3d ed.) 461. Another writer says: 'Not only are words and provisions modified to harmonize with the leading and controlling purpose or intention of an act, but also by comparison of one subordinate part with another; that is to say, the sense of particular words or phrases may be greatly influenced by the context, or their association with other words and clauses. The principle is embodied in the maxim, *noscitur a sociis*, and is applicable to the construction of all written instruments.' 2 Lewis' Sutherland, Stat. Constr. (2d ed.) §414. In the discussion of the maxim *noscitur a sociis*, Mr. Broom states: 'It is a rule laid down by Lord Bacon, that *copulatio verborum indicat acceptationem ineodem sensu*—the coupling of words together shows that they are to be understood in the same sense.' Broom's Legal Maxims (8th ed.) 588."

Vol. 179—44

Other accepted maxims and rules of interpretation which will suggest themselves at once to the mind of the lawyer without further elaboration of this opinion point with equal certainty to the rational intention of the legislature above indicated.

The contention of counsel for appellants that the words ''judge of this State'' found where they are in this statute is inclusive of every judge of every court of this State from the judge of a city court to a judge of this court ends in the conclusion that the legislature intended to give to every judge of every court of this State the authority to entertain the inquiry into the identity of an alleged fugitive whether the court of which he was the judge was in term or in vacation, and then, singling out three of the courts specifically, to perpetrate the stupid absurdity of giving to their judges the authority to do in term the very thing they had been before authorized to do at any time either in term or in vacation. If every judge of the State possesses the authority, he must have it at all times whether his court is in session or not and it could add nothing to say that his court should also have the authority, for without the judge the court is not. It is a cardinal rule that an interpretation which leads to an absurdity is not admissible if it can be well avoided. ''Where general language construed in a broad sense would lead to absurdity it may be restrained. The particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense they were intended to be used as they are found in the act. The sense in which they were intended to be used furnishes the rule of interpretation, and this is to be collected from the context; and a narrower or more extended meaning is to be given according to the intention thus indicated.'' 2 Lewis' Sutherland, Stat. Constr. (2d ed.) §376.

Counsel for appellants point out to us the fact that this act of 1905 for the first time in the history of legislation on the subject of extradition in this State requires the

examination into the identity of the alleged fugitive to be before a court, previous enactments having uniformly speci-field only judges of courts. The act of 1867 (Acts 1867 p. 126, 2 R. S. 1876 p. 421), which in other respects contained provisions similar to the one now in force required the officer executing the governor's warrant to bring the alleged fugitive "before the circuit or common pleas judge of this state who may be nearest or convenient of access to the place at which the arrest may be made." The act of 1881 (Acts 1881 [s. s.] p. 114, §1599 R. S. 1881), merely substituted "criminal" for "common pleas" the common pleas court having in the meantime been abolished and the criminal court created. The act of 1824 which continued in force until the passage of the act of 1867 is in no way influential for it did not contain the provision for an inquiry into the question of the identity of the person charged. In connection with this state of the law on the subject prior to the act of 1905 counsel quote from *Crawford* v. *Burke* (1904), 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147, that, "a change in phraseology of a statute reënacted creates a presumption of change of intent." And the attempt is made to buttress their contention with it. The rule is undeniably sound, but the support which it can give to the position of counsel is not clear. It does emphasize what I have conceived to be the intention of the legislature to make the courts specifically named the tribunals for the inquiry if they were in session or to give the judges of them the authority if they were not.

Counsel for appellants press with much zeal and earnestness the proposition that as the interstate extradition of fugitives from justice is enjoined by the Constitution of the United States and provided for by act of Congress, our statute on the subject which requires an inquiry by a state court or judge into the questions of the identity of the prisoner and whether he has fled from justice is invalid for infringing federal functions.

This question has been determined by this court adversely

to the contention of counsel in the cases of *Robinson* v. *Flanders* (1867), 29 Ind. 10, and *Hartman* v. *Avelin* (1878), 63 Ind. 344, 30 Am. Rep. 217. These cases are recognized by counsel as obstructions to the declaration of law which they are now demanding at the hands of this court on this question and they ask that they be swept aside or overruled. I can see nothing in reason or in any adjudication of the Supreme Court of the United States which demands the impairment of these cases as authority or justifies this court in now declaring the provisions of our statute which are involved to be in conflict with federal authority. And I do not understand that any member of this court entertains any doubt of the constitutional validity of these provisions.

Section 2 of article 4 of the Federal Constitution provides: "A person charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime."

The existing legislation of congress on the subject, which is embodied in §5278 R. S. U. S., was enacted in 1793 and provides: "Whenever the executive authority of any state or territory demands any person as a fugitive from justice, of the executive authority of any state or territory to which such person has fled and produces a copy of an indictment found or affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when it shall appear."

It is clear at a glance that practically all of the provisions of our extradition statute are in aid of the federal authority. And it requires but little reflection to understand that those provisions embodied in §§26, 27 and 33 of the act of 1905 (Acts 1905 p. 584, §§1893, 1894, 1899 Burns 1908), which require the courts of this State to inquire whether the one in custody is the identical person charged with the crime, and whether he had been in the demanding state and had fled therefrom, and to discharge him from custody if not, are really in aid of the federal laws and not an interference with or clog to them. It must be remembered that the citizen's right of liberty is held not less sacred, to say the least, under the constitution and laws of both state and federal governments than the apprehension and punishment of those guilty of crime. Neither the provision of the Federal Constitution, nor the statute passed pursuant to it, contemplate the transfer from one state to another as a fugitive criminal one who is not the identical person charged with the crime or one who was not in the demanding state and took no part at all therein in the alleged crime and who therefore had not fled from its justice. *Hyatt* v. *People, ex rel.* (1903), 188 U. S. 691, 23 Sup. Ct. 456, 47 L. Ed. 657; *Pettibone* v. *Nichols* (1906), 203 U. S. 192, 203, 27 Sup. Ct. 111, 51 L. Ed. 148, 7 Ann. Cas. 1047; *Strassheim* v. *Daily* (1911), 221 U. S. 280, 31 Sup. Ct. 558, 55 L. Ed. 735; monographic note to *Farrell* v. *Hawley* (1905), 112 Am. St. 111; *State* v. *Smith* (1902), 138 Ala. 111, 35 South. 42, 100 Am. St. 38 and note.

A due regard to the constitutional rights of the individual require that it shall not be done. These provisions of our statute help to make sure that the real purpose in the federal provisions is carried out and at the same time serve to safeguard the liberty of the citizen. The federal provisions do not prescribe the details of the procedure by which these questions may be determined. It was said by the Supreme Court of the United States in *Appleyard* v. *Massachusetts*

(1906), 203 U. S. 222, 228, 27 Sup. Ct. 122, 51 L. Ed. 161, 7 Ann. Cas. 1073, in reference to the extradition of fugitives from justice that "a state should take care, within the limits of the law, that the rights of its people are protected against illegal action." Our statute does this.

It is true that from a dictum of Justice Story in the case of *Prigg* v. *Pennsylvania* (1842), 16 Pet. *539, 10 L. Ed. 1060, it was at one time considered that states might not legislate even in aid of the federal laws by auxiliary enactments. But that opinion has long since ceased to be entertained and such laws are generally considered to be valid. Spear, Extradition (2d ed.) 311; 2 Moore, Extradition §542; *Moore* v. *People* (1852), 14 Howard *13, 14 L. Ed. 306; monographic note to *Farrell* v. *Hawley, supra; Dennison* v. *Christian* (1904), 72 Neb. 703, 117 Am. St. 817, 101 N. W. 1045, affirmed in *Dennison* v. *Christian* (1905), 196 U. S. 637, 25 Sup. Ct. 795, 49 L. Ed. 630; *Knowlton's Case,* 5 Crim. Law Magazine 250; *Kurtz* v. *State* (1886), 22 Fla. 36, 1 Am. St. 173; *Ex parte State of Alabama, in re Mohr* (1883), 73 Ala. 503, 49 Am. Rep. 63; *Ex parte Rosenblat* (1876), 51 Cal. 285; *Ex parte Ammons* (1878), 34 Ohio St. 518; *Commonwealth* v. *Tracy* (1843), 5 Met. (Mass.) 536; *Ex parte Butler* (1878), 18 Albany Law Journal 369. It was once in doubt whether the state courts were available to an alleged fugitive to have his right determined by writ of *habeas corpus,* the claim being that the jurisdiction of the United States courts was exclusive. The contrary has been definitely settled. *Robb* v. *Conolly* (1884), 111 U. S. 624, 4 Sup. Ct. 544, 28 L. Ed. 542; *Pettibone* v. *Nichols, supra,* and cases cited.

The contention of counsel that by the very force of the words in the federal law the governor must, before issuing his warrant, determine whether the person to be arrested thereon is the identical person charged and whether he is a fugitive from justice within the meaning of the law may be

conceded to be correct, notwithstanding the obvious diffi-
culty, which might sometimes arise, of the governor know-
ing in advance whether the officer chosen to execute the
warrant would arrest the right person; for it has been so
decided by the Supreme Court of the United States. Yet,
nevertheless, his determination of these questions is only
*prima facie* correct and may be reviewed by the courts. 19
Cyc. 94, and cases there cited; 6 Ency. of U. S. Supreme
Court Reports 226; *Hyatt* v. *People, supra; Pettibone* v.
*Nichols, supra,* and cases there cited; *People, ex rel.,* v. *Pease*
(1907), 207 U. S. 100, 108, 28 Sup. Ct. 58, 52 L. Ed. 121.
As these questions may be reviewed by the courts by the writ
of *habeas corpus,* unless the governor's decision has been
made conclusive by statute as has sometimes been done (19
Cyc. 94; *Davis's Case* [1877], 122 Mass. 324), it is difficult
to see why the more direct and summary method fixed by
our statute may not be provided. It is no argument against
it that the writ of *habeas corpus* is also open to the accused
in this State. Without the statute a man might be taken
from his domicile, although not the alleged criminal and
not a fugitive within the meaning of the federal laws, with
no opportunity given to resort to the writ to determine the
facts. See *Pettibone* v. *Nichols, supra.* Our statute blazes
with the intent to prevent such injustice.

It is true that the Supreme Court of the United States has
decided that no obligation is imposed *by the Constitution
or laws of the United States* on the agent of a demanding
state to so time the arrest of one alleged to be a fugitive
and so conduct his deportation from the surrendering state
as to afford him a convenient opportunity before some tri-
bunal, sitting in the latter state, upon *habeas corpus* or other-
wise, to test the question whether he was a fugitive from
justice and as such liable, under the act of congress, to be
conveyed to the demanding state for trial there. But it
will be observed by a glance at the official report of that

case, that in the opinion of the court written by Mr. Justice
Harlan, the words "by the Constitution or laws of the United
States" are italicised as they are given above. Why was
the court so particular to place stress upon these words?
It seems to me to be clear that it was done to obtrude the
implication that state laws might impose the obligation to
afford opportunity for a hearing on such question "upon
*habeas corpus* or otherwise."

In *People, ex rel.,* v. *Pease, supra,* it was held that the
governor's warrant, whether issued upon the requisition and
accompanying papers in proper form, or after an original,
independent inquiry into the facts, is to be regarded only as
"making a *prima facie* case in favor of the demanding state
and as requiring the removal of the alleged criminal to the
state in which he stands charged with crime, unless in some
appropriate proceeding it is made to appear that he is not
a fugitive from the justice of the demanding state." It is
held further that a proceeding by *habeas corpus* in a court
of competent jurisdiction is appropriate for determining
whether the accused is such fugitive from justice. The state-
ment that it is the sole appropriate proceeding is carefully
avoided.

The further point that is presented in appellants' reply
brief that §32 of the act of 1905 (Acts 1905 p. 584, §1899
Burns 1908) is in conflict with the privileges and immunities
clause of §2 of article 4 of the Federal Constitution and the
Fourteenth amendment, even if involved in the case made
by this record, comes too late. No such point was stated in
appellants' initial brief and under the fifth clause of Rule
22 it is too late to make it in the reply brief.

I think the case was correctly determined by the trial
court and that its judgment should be affirmed.

Morris, J., concurs in the above dissenting opinion.

NOTE.—Reported in 100 N. E. 842, 845, 847. See, also, under (1)
36 Cyc. 1106, 1128, 1147; (2, 7) 36 Cyc. 1114; (3) 36 Cyc. 1107; (4)
36 Cyc. 1110, 1136, 1138, 1147; (5) 36 Cyc. 1178; (6) 36 Cyc. 1106,

1108; (8) 19 Cyc. 100. As to the extradition of fugitives from justice and what judges have jurisdiction in such matters, see 1 Am. St. 173. As to the necessity of construing the words of a statute according to their ordinary meaning, see 12 Am. St. 827.