## UNITED STATES *v.* MORTON.

APPEAL FROM THE COURT OF CLAIMS.

Submitted October 15, 1884.—Decided October 27, 1884.

The time of service of a cadet in the Military Academy at West Point, from July 1st, 1865, to June 15th, 1869, is to be regarded as "actual time of service in the army," within the meaning of the acts of February 24th, 1881, and June 30th, 1882, 21 Stat. 346, and 22 Stat. 118, in computing his increase of pay "for each term of five years of service," under § 1262 of the Revised Statutes.

Charles Morton was appointed a conditional cadet in the service of the United States on March 6th, 1865, and was admitted as a conditional cadet on July 1st, 1865, into the United States Military Academy at West Point, and received his warrant as a cadet, signed by the Secretary of War, in January, 1866, stating that he had been appointed by the President a cadet of the United States Military Academy, to rank as such from July 1st, 1865. On the 1st of July, 1865, when he was so admitted as a conditional cadet, he entered into an agreement, as required by law, bearing that date, and subscribed and sworn to by him, which stated, that, "having been selected for an appointment as cadet in the Military Academy of the United States," he engaged, with the consent of his father, in the event of his receiving such appointment, that he would "serve

VOL. CXII.—1

in the army of the United States " for eight years, unless sooner .discharged by competent authority. The instrument embodied also the oath required by the act of July 2d, 1862, 12 Stat. 502, to be thereafter taken and subscribed by every person " elected or appointed to any office of honor or profit under the government of the United States, either in the civil, military, or naval departments of the public service, excepting the President of the United States," " before entering upon the duties of such office, and before being entitled .to any of the salary or other emoluments thereof." Part of the oath was, " that I will well and faithfully discharge the duties of the .office on which I am about to enter." He remained at the Academy from July 1st, 1865, until June 15th, 1869, when he was duly graduated therefrom. He was commissioned as a second lieutenant in the third regiment of cavalry, to date from June 15th, 1869, and thereafter as a first lieutenant in the same regiment, to take effect from September 25th, 1876. He held the latter position down to March 31st, 1883. He faithfully discharged the duties imposed on him by these various appointments, being continuously in the service of the United States, in a military capacity, from July 1st, 1865, to March 31st, 1883. In computing his service pay, he was not allowed credit for the time he was a cadet at West Point as part of his time of service in the army. He brought suit in the Court of Claims, against the United States, in July, 1883, to recover $169.07, as withheld from him in respect of time between February 24th, 1881, and March 31st, 1883, and, on the foregoing facts, that court rendered a judgment in his favor for that amount (see 19 C. Cl. 200), from which the United States appealed.

*Mr. Solicitor General*, in submitting the case on behalf of the appellant, rested upon the opinion of Attorney-General McVeagh, dated May 14th, 1881, under which the Executive Departments acted in rejecting the appellee's claim. In this opinion, among other things, it was said—" The question submitted by you is whether the period passed by a cadet at West Point receiving his military and other instruction at that Acad-

emy is to be computed as 'actual time of service in the army;' and I have no difficulty whatever in answering this question in the negative." Attorney-General Cushing said : "We see by the statute that the internal military organization of the Academy is for the purpose of military instruction. *It is not actual service in the army.*" 7 Opins. Att'ys-General, 333. If it had been the intention of Congress to enact that the period passed by the cadets at West Point should be placed upon the footing of *actual service in the army*, it would have been perfectly easy to have said so by language incapable of being misunderstood ; and it seems to me that it is extremely undesirable to torture the language of Congress in order to find in it, by relation to some other statute, a technical effect, when the apt words to express such an intention readily occur to every unbiased mind. It is very true that the corps of cadets at West Point constitute part of the army, but it does not follow that a cadet pursuing his studies at West Point is in *actual service in the army*, within the meaning of the clause in the army appropriation bill; and, if Congress at any time desires to add this advantage to those already possessed by the young men who are educated at the public expense at the Military Academy, it will be very easy for it to do so by declaring that the time passed by cadets at the Military or Naval Academy shall be computed as "actual time of service in the army or navy;" but, until language clearly indicative of this meaning is used it would be, in my judgment, very unwise to endeavor to extract it from a clause in the army appropriation bill treating only of the army as in actual service in the ordinary meaning of the phrase.

*Mr. S. S. Henkle* for appellee.

Mr. Justice Blatchford delivered the opinion of the court. He stated the facts in the foregoing language, and continued :

It is provided as follows by § 1262 of the Revised Statutes : "There shall be allowed and paid to each commissioned officer below the rank of brigadier-general . . . ten per centum of their current yearly pay for each term of five years of ser-

vice." In the acts of February 24th, 1881, 21 Stat. 346, and June 30th, 1882, 22 Stat. 118, making appropriations for the support of the army, under the head, "For pay of the army," gross sums are appropriated for, among other things, this purpose: "Additional pay to officers for length of service, to be paid with their current monthly pay, and the actual time of service in the army or navy, or both, shall be allowed all officers in computing their pay." The only question for decision is, whether the time of service as a cadet is to be regarded as "actual time of service in the army."

The view acted on by the accounting officers of the government in dealing with the officer under § 1262 of the Revised Statutes, and § 24 of the act of July 15th, 1870, 16 Stat. 320, of which § 1262 was a re-enactment, was to allow only for length of service as a commissioned officer in the regular army. By § 7 of the act of June 18th, 1878, 20 Stat. 150, it was provided that officers of the army who had served "as enlisted men in the armies of the United States, regular or volunteer," should be credited with the full time they had served as such enlisted men, "in computing their service for longevity pay." Under this statute the practice was not to regard an officer who had served as a cadet as having thereby served as an enlisted man in the army, 16 Opin. Att'ys-General, 611; and the Court of Claims, in *Babbitt* v. *The United States*, 16 C. Cl. 202, supported that view. After the passage of the act of February 24th, 1881, the accounting officers of the government administered it as not requiring that the time of service as a cadet should be allowed as "actual time of service in the army." This was done in pursuance of the advice of Attorney-General McVeagh.

But an examination of the legislation of Congress shows that the cadets at West Point were always a part of the army, and that service as a cadet was always actual service in the army. Cadets are first mentioned in the act of May 9th, 1794, 1 Stat. 366, which provided for organizing, by voluntary enlistment, a corps of artillerists and engineers, of which a part was to be thirty-two cadets, ranking as sergeants, but spoken of as officers. These were part of the army. By § 6 of the act of

July 16th, 1798, 1 Stat. 605, cadets are called non-commissioned officers in the army of the United States, and their pay is fixed at $10 per month and two rations per day.

By the act of March 16th, 1802, entitled " An Act fixing the military peace establishment of the United States," 2 Stat. 132, it was provided (§ 1) that the military peace establishment of the United States should embrace a regiment of artillerists, of which a part should be forty cadets. By §§ 4 and 5 the pay and rations of the cadets were fixed. By § 26 provision was made for organizing a corps of engineers, consisting of officers, and ten cadets, whose pay was fixed; and by § 27 the corps was to be stationed at West Point, New York, and to constitute " a military academy," and the officers and cadets were to be "subject, at all times, to do duty in such places and on such service" as the President should direct. Clearly, all these cadets were a part of the army.

By §§ 1 and 2 of the act of April 12th, 1808, 2 Stat. 481, additional military forces were to be raised, comprising, in infantry, riflemen, artillery, and dragoons, one hundred and fifty-six cadets, the cadets, (§ 4), to receive the like pay, &c., with the cadets of the then existing military establishment, and being classed by themselves and not as either officers or non-commissioned officers, and, (§ 5), to be subject, with the then existing cadets, to the rules and articles of war, which had been established or might thereafter, by law, be established.

By § 2 of the act of April 29th, 1812, 2 Stat. 720, entitled " An Act making further provision for the corps of engineers," it was provided that the Military Academy should consist of the corps of engineers and certain professors. By § 3 it was enacted that the cadets theretofore "appointed in the service of the United States, whether of artillery, cavalry, riflemen or infantry," or that might in future be appointed, as thereinafter provided, should not exceed two hundred and fifty, and might be attached by the President, as students, to the Military Academy, and be subject to the established regulations thereof; "that they shall be arranged into companies of non-commissioned officers and privates, according to the directions of the commandant of engineers, and be officered from the said corps,

for the purposes of military instruction; that there shall be added to each company of cadets four musicians; and the said corps shall be trained and taught all the duties of a private, non-commissioned officer, and officer, be encamped at least three months of each year, and taught all the duties incident to a regular camp; that the candidates for cadets be not under the age of fourteen nor above the age of twenty-one years; that each cadet . . . shall sign articles, with the consent of his parent or guardian, by which he shall engage to serve five years, unless sooner discharged; and all such cadets shall be entitled to and receive the pay and emoluments now allowed by law to cadets in the corps of engineers." This was the organization of the Military Academy substantially as it has since continued.

By § 1 of the act of March 3d, 1815, 3 Stat. 224, entitled "An Act fixing the military peace establishment of the United States," it is directed that the corps of engineers, as then established, be retained; by § 4, that the compensation, &c., of the cadets and others "composing the military peace establishment" should be the same as prescribed by the before mentioned acts of 1802 and 1808; and by § 7, that the several corps authorized by the act " shall be subject to the rules and articles of war."

By § 28 of the act of July 5th, 1838, 5 Stat. 260, it was enacted that "the term for which cadets hereafter admitted into the Military Academy at West Point shall engage to serve, be and the same is hereby increased to eight years, unless sooner discharged."

By § 1 of the act of July 28th, 1866, 14 Stat. 332, it was provided that the military peace establishment of the United States should thereafter consist of so many regiments of artillery, of cavalry and of infantry, "the professors and corps of cadets of the United States Military Academy," and such other forces as should be provided for by that act, "to be known as the army of the United States." This enactment remained in force, and is reproduced in § 1094 of the Revised Statutes, which says that "the army of the United States shall consist of," with other constituents, "the professors and corps of cadets of the United States Military Academy."

From this review of the statutes, it cannot be doubted that, before the passage of the act of July 28th, 1866, as well as afterwards, the corps of cadets of the Military Academy was a part of the army of the United States, and a person serving as a cadet was serving in the army; and, that the time during which the plaintiff in the present case was serving as a cadet, was, therefore, actual time of service by him in the army.

The practical construction of the requirement of the act of 1838, that the cadet should engage to serve for eight years, shown by the fact that the form of the engagement in this case was to " serve in the Army of the United States for eight years," is a circumstance of weight to show that the government, from the beginning, treated the plaintiff as serving in the army.    The service for which he engaged began on the 1st of July, 1865, and the eight years ran from that time.    That being his status, the acts of 1881 and 1882, in speaking of " actual time of service in the army," cover the time of his service as a cadet.

In *United States* v. *Tyler*, 105 U. S. 244, it was held that an officer retired from active service, who was declared by statute to be a part of the army, who could wear its uniform, whose name was required to be borne on its register, who might be detailed by his superior officers to perform specified duties, and who was subject to the rules and articles of war, was in the military service; and that the increase of pay given for each term of five years of service, by § 1262 of the Revised Statutes, and by § 24 of the act of July 15th, 1870, 16 Stat. 320, from which that section was taken, applied to the years so passed in the service after, as well as before, retirement. Under the statutes involved in the present case, a cadet at West Point is serving in the army as fully as an officer retired from active service is serving in the army, under the statutes which apply to him so far as the question of longevity pay is concerned.

*The judgment of the Court of Claims is affirmed.*