Weldon, J.,
delivered the opinion of the court:
The petitioner alleges in substance that he served on the active list as post chaplain in the regular Army of the United States from February 6,1865, to the bringing of this suit; that during all of said time he discharged the duties faithfully; that from February 6,1885, to April 27,1887, he served in said Army as a commissioned officer; that on said February 6, 1885, he completed twenty'years’ service; that thereafter he was entitled, under section 1262 of the Revised Statutes, to four longevity allowances, one for each term of five years; and that all of his time in said service is computable on his commission for longevity pay, or ‘£ additional pay to officers for length of service.”
“That during the said period of time, from February 6,1885, to April 27, 1887, he was paid his graded or foundation pay of fifteen hundred dollars ($1,500.00) per annum, with only three longevity allowances, and that the remaining one, his fourth longevity allowance, yet remains unpaid, and is of the value of ten per centum on his then graded pay of fifteen hundred dollars ($1,500.00) per annum, and amounts, in said period, from February 6,1885, to April 27,1887, to three hundred and thirty-three dollars and seventy-five cents ($333.75.); that there has been no action on this claim by Congress or any Executive Department ; that there has been no assignment or transfer of *298 this claim or any part thereof or interest therein, and that the United States are justly indebted to your petitioner for the whole amount claimed, three hundred and thirty-three dollars and seventy-five cents, over and above all just credits and set-off.»
The facts show that the claimant, on the 6th day of February, 1865, was employed as post chaplain for the post at Fort Columbus under the provisions of the act of July 5, 1838, and the supplementary and amendatory statutes passed thereafter, and served as such under said appointment until commissioned as chaplain under the provisions of the act of March’2, 1867, and was confirmed by the Senate April 3, 1867, to rank from April 3,1867. He continued on the active list of the Army until March 23,1890, when he retired under the act of June 30,1882.
He held no commission as an officer prior to the one issued to him at said time under the act of 1867.
This case involves the contention that in the adjustment and allowance of longevity pay the claimant is entitled to be credited with the time in which he served without a commission, extending from the 6th day of February, 1865, to the 3rd day of April, 1867, the date of his commission. To that view of his rights the Department acceded until a certain time of his active service, when that portion of his time was excluded, and he was paid on the basis of that exclusion. It was conceded, and is so found, that as a result of that exclusion there was withheld from the claimant said sum of $333.75, and if his contention be true under the law, a judgment should be rendered for said sum.
The issue involves the application and construction of several provisions of the statut es. Section 1262, Kevised Statutes, provides:
“There shall be allowed and paid to each commissioned officer below the rank of brigadier-general, including chaplains and others having assimilated rank or pay, 10 per centum of their current yearly pay for each term of five years of service.»
Said section was amended by the act of June 30,1882, by a proviso in said act as follows:
“ Provided, That from and after the first day of July, 1882, the ten per cent, increase for length of service allowed to certain officers by section 1262 of the Revised Statutes should be *299 computed in the yearly pay of the grade fixed by section 1261 and 1274 of the Eevised Statutes; pay to enlisted men for length of service payable with their current monthly pay; retired officers for the payment of any such officers as may be in service either upon the active or retired list during the year ending June 30, 1883 * * * (22 Stat. L., 117); * * * additional pay to officers for length of service to be paid with their current monthly pay and the actual time of service in the Army * * * shall be allowed all officers in computing their pay.” (21 Stat. L., 346).
The act of March 3, 1883, making appropriations for the Navy for the year ending June 30,1883, provides as follows:
“And all officers of the Navy shall be credited with the actual time they may have served as officers or enlisted men in the regular or volunteer army or navy, or both, and shall receive all the benefits of such actual service in all respects in the same manner as if said service had been continuous and in the regular Navy in the lowest grade having graduated pay held by such officer since last entering the service. (22 Stat. L., 473, ch. 97).”
The act of March 2, 1867, section 7, provides :
“ That (excepting the ordnance storekeeper and paymaster at the Springfield Armory, who has the rank, pay, and allowances of a major of cavalry), all storekeepers of the Army shall hereafter have th'e rank, pay, and allowances of captains of cavalry; and the post chaplains now in service, or hereafter to be appointed, shall be commissioned by the President, and all vacancies occurring in the grade of chaplain, which is hereby established to rank as captain of infantry, shall be filled by the President, by and with the advice and consent of the Senate, and all Army chaplains shall hereafter be on the same footing as to tenure of office, retirement, allowances for services and pensions as now provided by law for other officers of the Army.”
Section 1262, as to the right of longevity pay, is unaffected m principle by the act of J une, 1882, the latter act simply providing a numerical measure of compensation for the pay of an officer; and the question recurs, what are the plaintiff’s rights under section 1262 % Do they attach under said section from the mere act of service connected with Army, or are they dependent upon, and incident to, an official relation founded on a commission ?
Prior to April, 1867, the claimant was not an officer in the Army of the United States; he had no commission; he had *300 been “employed” by the council of administration under the statutes to perform functions not necessarily military in their character, but purely civil.
Under the act of 1807 he was commissioned as a chaplain in the Army by the President, and from that time dates his relation as a chaplain de jure to the public service..
While he had a connection with the Army, he was not in it and of it, in the sense of being fully responsible as an officer or soldier.
In the case of Morton v. The United States (19 C. Cls. R., 200) it was held that a cadet at West Point, during his stay in the Military Academy, was in service in the Army within the meaning of the statute.
Section 1094 of the Revised Statutes provides in designating who shall compose the Army of the United States “ and the professors and' corps of cadets of the United States Military Academy,” and section 132 of the Revised Statutes provides “ Cadets shall be subject at all times to do duty in such places and on such service as the President may direct. ” Under that statute this court held that an officer in the computation of his longevity pay was entitled to a credit for the time he served in the Military Academy.
On appeal, that decision was affirmed by the Supreme Court, the court holding in substance that section 1094 was a reproduction of the various statutes of the United States, which had before that time recognized the cadets of the United States Military Academy as a part of the Army of the United States. (112 U. S. R., 1.)
The fact that a person is a part of the Army of the United States tends to sustain his claim for longevity pay, his status being that of a soldier within the meaning of the law; and if it could be shown that the claimant by bis connection with the military service during the period he served without a commission was in the»Army of the United States, the difficulty in this case would be greatly diminished, if not entirely removed.
During the time he served as chaplain without a commission he performed a service for the United States, and that service being connected with the Army, it may be said that in the broad sense of the term he was in the military service of the United States. All contractual relations, comprehending the discharge of a duty, involves a service as to the party con- *301 traeting, but the service is limited and qualified by the nature of the employment and the extent of the obligation of the contract. Although the claimant might under certain circumstances of his employment “be subject to orders according to the rules and dieipline of war, ” it does not follow that he belonged to the Army of the United States in contemplation of law. Many persons holding a civil connection with the Government, and performing duties incident to the Army, may be held subject to the rules of war, and yet not form a part of the Army. (Digest, Op. Judge-Advocate-General Winthrop, 48-49.)
From the report of the Adjutant-General to the Second Comptroller, “ it does not appear that post chaplains appointed or elected under the act approved July 5,1838, were required to execute an oath of office, or that as a matter of fact they did take such oath.
The Supreme Court, in the case of Hendee v. The United States (124 U. S. R., 309), decided that under the act of 1883 a paymaster’s clerk in the Navy is an officer of the Navy within the meaning of said act, although the court at the same time held that under the act of June 30, 1876, a paymaster’s clerk was not in the Navy, so as to be entitled to mileage under said act. (United States v. Mouat, 124 U. S. R., 303.)
The court decided that, because of the peculiar phraseology and construction of the act of 1883, Congress intended to allow the actual service in the Navy without reference to the technical character of the claimant, and differentiated the cases of Mouatt and Hendee.
It is one of the most difficult tasks of judicial duty to construe and reconcile the different provisions of a series of statutes, the structure of the law being the result of arbitrary enactments. No principle of legal philosophy can be invoked in the guidance of construction, which is often a light, to determine results, where the principles of the common law are applicable to the litigation of the parties.
Section 1262 provides there shall be allowed and paid to each commissioned officer below the rank of brigadier-general, including chaplains and others having assimulated rank or pay, 10 per cent, of their current yearly pay for each term of five years.
This statute must be construed in connection with the act of March 2, 1867, in which it is provided for the first time that *302 “ post chaplains now in service or hereafter to be appointed shall be commissioned by the President, and all vacancies occurring in the grade of chaplain, which is hereby established to rank as captain of infantry, shall be filled by the President, by and with the advice and consent of the Senate. ”
In the opinion of the court, the sections of time provided for by statute in which the longevity pay of 10 per cent, is assessed are limited to the commission as provided by the act of 1867 j and the petition is therefore dismissed.