Campbell, Chief Justice,
delivered the opinion of the court:
The question for decision is whether the time of service as a cadet at the West Point Academy is to be regarded as part of the officer’s service in the Army for the purpose of longevity pay under the provisions of the act of May 18, 1920, 41 St-at. 601, section 11 of which reads as follows:
“ That in lieu of compensation now prescribed by law, commissioned officers of the Coast and Geodetic Survey shall receive the same pay and allowances as now are or hereafter may be prescribed for officers of the Navy with whom they hold relative rank as prescribed in the act of May 22, 1917, entitled ‘An act to temporarily increase the commissioned and warrant and enlisted strength of the Navy and Marine Corps, and for other purposes,’ including longevity; and all laws relating to the retirement of commissioned officers of the Navy shall hereafter apply to commissioned officers of the Coast and Geodetic Survey: Provided, That hereafter longevity pay for officers in the Army, Navy, Marine Coi’ps, Coast Guard, Public Health Service, and Coast and Geodetic Survey shall be based on the total of all service in any or all of said services.”
*690 As tending to sbed some light on the meaning of this proviso reference may be had to the act of June 4,1920, 41 Stat. 759, 785, amendatory of the National Defense Act, and for other purposes, passed shortly after the act of May 18, in which under the head of “Miscellaneous provisions,” contained in section 127a, appears the following:
“ In determining relative rank and increase of pay for length of service and, in the case of officers of the Eegular Army, in determining rights of retirement, active duty performed while under appointment from the United States Government, whether in the Eegular, provisional, or temporary forces, shall be credited to the same extent as service under a Eegular Army commission.”
Since the decisions in Morion's case, 112 U. S. 1, and Watson's case, 130 U. S. 80, it is not to be doubted that the time of the service of a cadet in the Military Academy is to be regarded as a part of the time of service in the Army and to be counted in computing his longevity pay except where the officer is deprived of this right by the act of 1912, hereafter mentioned. In Morton's case it appeared that the accounting officers of the Government in dealing with the officer’s pay under section 1262, Eevised Statutes, allowed only for length of service as a commissioned officer in the Eegular Army. The act of June 18, 1878, 20 Stat. 150, having provided that officers who had served as enlisted men should be credited with that service “ in computing their service for longevity pay,” the practice was not to regard an officer who had served as a cadet as thereby having served as an enlisted man in the Army. The Army appropriation act for the year ending June 30, 1882, and the similar act for 1883, 21 Stat. 346, and 22 Stat. 117, carried a provision to the effect that additional pay should be allowed officers for length of service, to be paid with their current monthly pay, and provided that “ actual time of service in the Army or Navy, or both, shall be allowed all officers in computing their pay.”
The point of contention, therefore, in the Morton case in the Court of Claims was stated to be in connection with the words “ actual time of service in the Army,” 19 C. Cls. 200 204. From this court’s judgment the Government appealed, *691 and as appears in the Supreme Court’s opinion, the only question for decision was whether the time of service as a cadet is to be regarded as actual time of service in the Army. That court decided that a person serving as a cadet was serving in the Army, and that the time during which Morton was serving as a cadet was therefore “ actual time of service by him in the Army.” After this decision the Watson case, supra, arose. It was held that the officer was entitled to have counted as service in the Army the time of service as a cadet within the meaning of the act of July 5, 1838, 5 Stat. 256. These decisions were rendered in 1884 and 1888, respectively, and from that date until the act of 1912 the Army appropriation acts have made appropriations for longevity pay under provisions of substantially similar import, as follows: “ For aditional pay to officers for length of service, to be paid with their current monthly pay.” The ruling in the Morton case has been consistently applied, the service as a cadet being recognized as a part of the “ service ” entering into the length of service of an officer of the Army. But in the act of August 24, 1912, 37 Stat. 569, 594, making appropriation for the Army, there is a provision, contained in section 6 of the act as follows:
“ That hereafter the service of a cadet who may hereafter be appointed to the United States Military Academy or to the hi aval Academy shall not be counted in computing for any purpose the length of service of any officer of the Army.”
This enactment effectually disposed of the rule stated in the cases of Morton and Watson, supra, so far at least as those officers coming within its terms were concerned. Forbidding the counting of the service of a cadet appointed after the act was passed “ in computing for any purpose the length of service,” the enactment had the effect of removing from consideration the cadet service of those appointed after the date of the act, in computing longevity pay. Whether the plaintiff is entitled to recover in this case must depend therefore upon the meaning of legislation subsequent to the act of 1912. We have quoted section 11 of the act of May 18, 1920, containing the proviso upon which the plaintiff relies. The purpose of the entire act is to increase the pay of officers of the Army, Navy, and other branches, and section 11 relates *692 primarily to officers of the Coast and Geodetic Survey. Inasmuch as it provides for their rank and pay, “ including longevity,” it seems manifest that the proviso declaring that “ hereafter longevity pay for officers in the Army, Navy, Marine Corps, Coast Guard, Public Health Service, and Coast and Geodetic Survey shall be based on the total of all service in any or all of said services ” must have a broader purpose and more extended application than the part of the section which precedes it and relates on one branch. That it states a basis for computing longevity pay in other branches than the Coast and Geodetic Survey is manifest; and if this act stood alone there would be no difficulty in arriving at the conclusion that its plain import is that any service in either of the enumerated branches is to be counted in computing the length of an officer’s service for the purposes of longevity pay.
In the instant case, as in the Morton case, the cadet’s engagement was “to serve eight years, unless sooner discharged ” (Rev. Stat., sec. 1321). Morton entered the academy as a cadet July 1, 1865. Speaking of his engagement, the Supreme Court say that it is a circumstance of weight to- show that the Government from the beginning treated the plaintiff as serving in the Army. “ The service for which he engaged,” say the court, “ began on the 1st of July, 1865, and the eight years ran from that time.” See Watson's case, 130 U. S. 80, 82. Similarly Noce’s eight years of service began when he entered the academy under appointment in 1913. This would require service as a cadet to be counted under the ruling of the Morton and Watson oases. The act does not expressly repeal the earlier act of 1912, or that of 1913, 37 Stat. 891, and whether they, or either of them, are impliedly repealed depends upon whether all may be given effect or are so inconsistent or repugnant that the acts of 1912 and 1913 must, at least to the extent of the repugnancy, yield to the later enactment. In Tynerts case, 11 Wall. 88, 92, the rule is thus stated: *693 nancy as a repeal of the first; and even where two acts are not in express terms repugnant, yet if the latter act covers the whole subject of the first; and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act.”
*692 “ When there are two acts on the same subject the rule is to give effect to both if possible. But if the two are repugnant in any of their provisions, the latter act, without any repealing clause, operates to the extent of the repug-
*693 See The Paquette Habana, 175 TJ. S. 677, 685; Cook County Bank v. United States, 107 U. S. 441, 445.
The act of 1912 provides that service as a cadet at West Point of those appointed after the date of the 'passage of the act shall not be counted in computing for any purpose the length of service of any officer. As already shown, service at the Academy had been construed to be military service for the purposes of longevity pay under an act authorizing the computation to be based on the “actual” time of service. Morton case. That case points out a number of statutes showing that “ cadets at West Point were always a part of the Army,” and this condition continues under the National Defense Act of 1916, 39 Stat. 166, and the amendatory act of 1920, 41 Stat. 759, a provision from which is quoted in the earlier part of this opinion. Both of these acts (section 2) recognize the cadets of the United States Military Academy as part of the Regular Army of the United States.
The Government’s contention that under the act of 1912 “ a cadet in the United States Military Academy, while in military training there as a student, is not a person serving in the military or naval forces of the United States,” can not be sustained because of the decisions above mentioned and for the further reason that it is based upon an erroneous interpretation of the act. This act of 1912 by its terms applies to cadets appointed subsequent to its enactment, and it does not purport to affect the longevity pay of those officers who had been appointed cadets prior to its passage. Nor does it declare that the service of cadets is not service in the Army. On the contrary, it speaks of “ service ” and length of service. The same word is used in the act of 1920. As was said in Watson)s case, supra, in referring to words used in the act of 1881 and that of 1838, “ they both mean the same kind of service.” The act of 1912 did not limit the meaning of service, but its effect was to carve out of the entire service of the officer that period of service passed at
*694 the Military Academy in counting the length of service for any of the purposes, as, for instance, the purpose of lineal rank, or of retirement, as well as for the purpose of longevity pay. It refers to any purpose, while the later act is limited to one purpose — that of providing a basis for computing longevity pay. The act of 1912 specifies that the cadet service shall not be counted in computing length of service for any purpose. The act of 1920 is limited to the question of longevity pay. It may be said, therefore, to form an exception to the more general statement in the act of 1912. See Rodgers v. United States, 185 U. S. 83, 89. “ The total of all service ” in the Army includes service at the Military Academy under the authorities mentioned, and this “ total of all service” is the basis for longevity pay for officers in the Army according to the act of 1920. This requires all service to be counted, while the act of 1912 forbids a part of the service being counted. We can not find the total of all service by excluding part of the service from the computation; and service as cadet is part of the service in the Army. Morton Case; Watson case; see also Hartigan case, 196 U. S. 169,114; Baker case, 125 U. S. 646; Cook case, 128 U. S. 254. It seems to us that the proviso in the act of 1920 above quoted is inconsistent with the act of 1912 so far as the basis of computing length of service for longevity pay is concerned, and that the earlier must yield to the later enactment.
The history of the act of May 18, 1920, in its passage by Congress sustains the view we have taken of the meaning of the proviso in section 11. A bill (H. R. 11927) was passed by the House and sent to the Senate, where it was substantially amended. It was afterwards sent to conference. Its title as it passed the House was “A bill to increase the efficiency of the personnel of the Navy and Coast Guard through the temporary provision of bonuses or increased compensation.” Many of its provisions were changed in conference and the conference report was adopted. (See Cong. Rec., 66th Cong., 2d sess., vol. 59, pt. 7, pp. 7048-51.) The title had been changed by the Senate, and as changed was agreed to, so that it read “An act to increase the efficiency of the •commissioned and enlisted personnel of the Army, Navy, *695 Marine Corps, Coast Guard, Coast and Geodetic Survey, and Public Health Service,” thus materially enlarging the scope of the original bill.
In their statement to the House by the managers on the part of the House it was said: “ This amendment in title is agreed to since it more aptly describes the scope of the legislation as amended and agreed to.” Plainly it affected all branches of the military service. Section 11, providing for the Coast and Geodetic Survey, was section 5 of the Senate amendment (vol. 59, pt. 3, Cong. Pec., p. 2251). But the proviso in question was additional to that amendment and was inserted in conference. The section deals primarily with the Coast and Geodetic Survey, and gives them the pay and allowances prescribed for officers of the Navy “ with whom they hold relative rank,” as prescribed in the act of May 22, 1917, “including longevity.” In explanation of this section the managers on the part of the House reported “ it also contains a proviso placing all the service on an equality in the matter of computation of longevity or service pay.” There was an inequality of longevity pay of officers whose appointments as cadets were prior to 1912 and those whose appointments were subsequent to 1912. The service of a cadet appointed in 1911 could be counted for the purpose of longevity, but the service of a cadet appointed after the act of 1912 could not be counted for any purpose in computing his length of service. Section 11 provides for pay for officers in the Coast and Geodetic Survey by prescribing the same pay and allowances that are prescribed for the officers of the Navy with whom they hold relative rank, and this same distinction in longevity pay required by the act of 1912 in the case of Army officers is also required in the case of naval officers by the act of 1913 above mentioned, which fact would ultimately lead to confusion and inequality in the pay of the officers in the Coast and Geodetic Survey holding relative rank.
The Supreme Court, in deciding the Hartigan, ease, supra, said it was not a question whether the cadet at West Point was an officer in the. Army. It concedes that his service as a cadet was actual time of service in the Army, within the *696 meaning of the statute giving longevity pay to officers. However, in the Baker case, 125 IT. S. 646, it is held that a midshipman at the Naval Academy is an officer of the Navy, and serving as such, though continuing to be a student in the Naval Academy, and that his service as midshipman entitled him to longevity pay. In the Cook case, 128 IT. S. 254, where the same general question arose, it is said “ that a midshipman is an officer has been understood ever since there was a Navy.” But, as already stated, the question is not whether a cadet at West Point is an enlisted man within the meaning of the statutes, but whether his service as cadet is service in the Army, and this question has been resolved affirmatively by the case mentioned.
Our conclusion is that the plaintiff is entitled to recover, and judgment should be awarded in his favor. It is so ordered.
Graham, Judge; Downey, Judge, and Booth, Judge, concur.
On March 3, 1924, defendant’s motion for new trial was overruled, Hay, Judge, dissenting.