WINFREE v. UNITED STATES.

No. 48730.

United States Court of Claims.

July 13, 1953.

Mahlon C. Masterson, Washington, D. C., for plaintiff. Burr Tracy Ansell and Ansell & Ansell, Washington, D. C., were on brief.

Laurence H. Axman, New York City, with whom was Asst. Atty. Gen. Holmes Baldridge, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

Plaintiff, a Colonel in the regular army, brings this action to recover the difference in pay between that actually received by him as a retired officer and that which he would have received had he remained on active duty for the period between February 1, 1942, and November 30, 1943.

There are two principal questions which we are called upon to decide. First, whether plaintiff's retirement orders were effectively revoked; second, if not, whether plaintiff on January 31, 1942, had the requisite service for retirement under Section 1 of the Act of June 30, 1882, 22 Stat. 117.

This section of the Act provides in pertinent part as follows:

"* * * when an officer has served 40 years either as an officer or soldier in the regular or volunteer service, or both, he shall, if he made application therefor to the President, be retired from active service and placed on the retired-list, * * *." 10 U.S.C.A. § 942.

Plaintiff was born November 17, 1883, entered the military service as a cadet at the United States Military Academy on August 30, 1899, graduated on June 11, 1903, was commissioned a Second Lieutenant, Cavalry, United States Army, and served continuously thereafter as a commissioned officer through January 31, 1942.

On September 18, 1941, plaintiff, then serving as a Colonel of Cavalry on duty as Commanding Officer, Fort McPherson, Georgia, addressed a request to the Adjutant General of the Army that he be granted his accumulated leave of absence, effective on or about October 1, 1941, and that at the termination of his leave he be retired under the provisions of Section 1, Act of June 30, 1882, supra.

Responsive to this request, the Chief of Staff, United States Army, by order of the Secretary of War, issued Orders on October 2, 1941, retiring plaintiff effective December 31, 1941 which were later amended on October 4, 1941 to show the effective

date of plaintiff's retirement as January 31, 1942. The orders were issued "By direction of the President" and were signed "By order of the Secretary of War: G. C. Marshall, Chief of Staff." (See finding 3.)

Accordingly, plaintiff was granted leave of absence commencing October 23, 1941 and ending January 31, 1942. On November 11, 1941, plaintiff was appointed Assistant President, Pennsylvania Military College, Chester, Pennsylvania, and for his services he was to have received the difference between the active pay and allowances of a colonel, and the retired pay of a colonel.

On December 7, 1941, Colonel Winfree wired the Adjutant General that in view of opening hostilities he earnestly requested withdrawal of his voluntary application for retirement after more than 42 years of service and that his retirement orders effective January 31, 1942 be revoked. (Finding 5.)

The Adjutant General replied by telegram on December 12, 1941, asking plaintiff to confirm his request for revocation of retirement orders in writing and to state whether or not he had shipped his household goods and drawn mileage in connection with his retirement orders.

On December 13, 1941 plaintiff replied by letter to the Adjutant General confirming his request for revocation of his retirement orders, informing him that he had not shipped his household goods, nor secured mileage reimbursement in connection with the retirement order, and stated that he would appear in Washington, D. C. at the office of the Adjutant General on December 17, 1941.

The same day upon which plaintiff wrote the Adjutant General, i. e., December 13, 1941, he received a telegram from Major General Herr, Chief of Cavalry, who at plaintiff's request had inquired as to the status of the retirement orders, advising him that Herr had been assured by the Adjutant General that plaintiff's retirement orders would be revoked.

Apparently acting upon this assurance, plaintiff on December 15, 1941, resigned his position with the Pennsylvania Military College and on December 17, 1941, of his own volition arrived in Washington, D. C.,

at which time he conferred with Colonel Sherburne Whipple, then Assistant Adjutant General in charge of personnel. Whipple informed him that he had been instructed to revoke plaintiff's retirement orders and that such orders would be issued when the Army decided what specific duty assignment would be given plaintiff. Upon plaintiff's inquiry as to what to do in the meantime, Colonel Whipple suggested that he go back to his station in Atlanta and await orders which he did.

However, plaintiff never did receive such orders and on January 2, 1942, he again asked for revocation of retirement orders by telegram. On January 15, 1942, the Adjutant General replied that plaintiff should comply with existing retirement orders; that there was no suitable vacancy and that he would be recalled to active duty if needed.

Consequently plaintiff's retirement was allowed to become effective on January 31, 1942, and upon retirement he was allowed travel and shipment of his personal property to his home and has since been paid retirement salary.

On April 21, 1942, plaintiff protested in letter to the Adjutant General that he had been illegally retired in view of his attempted withdrawal of his application for retirement. The letter was acknowledged on May 20, 1942, rejecting plaintiff's protest and denying any illegality or error in the retirement proceedings.

On June 3, 1942, the Chief of Military Personnel Division, Army Air Forces, requested the Adjutant General for orders recalling plaintiff to active duty but the request was not acted upon.

Had plaintiff not been retired effective January 31, 1942, he would have reached the compulsory retirement age on December 1, 1943, under the provisions of the Act of April 23, 1930, 46 Stat. 253, 5 U.S.C.A. § 47a, and Section 5 of the Act of July 31, 1935, 49 Stat. 507, as amended by Section 3 of the Act of June 13, 1940, 54 Stat. 380, 10 U.S.C.A. §§ 943a, 971b.

The plaintiff's position at Pennsylvania Military College was filled, he never sought employment elsewhere and he has never

been recalled to active duty in the military service of the United States.

■ Plaintiff's claim for pay for the period from February 1, 1942, to June 30, 1942, is barred by the Statute of Limitations since the petition was not filed until June 30, 1948. 28 U.S.C. (Supp. IV) § 2501.

Plaintiff in support of his contention that the Adjutant General had instructed that his retirement orders be revoked relies on the telegram received from Major General Herr (Finding 8) and the conversation which he testified that he had with Colonel Whipple. (Finding 9.) While recognizing the fact that no formal orders of revocation by the Adjutant General were ever executed, plaintiff urges that notification in this manner was sufficient. Plaintiff also contends that in so revoking his orders the Adjutant General was acting within the scope of his authority.

■ Defendant asserts that since plaintiff's application for retirement had been accepted by the Secretary of War acting at the direction of the President, the plaintiff's retirement orders could only be revoked by appropriate action by these same officials, and there is no proof of such action here.

While we believe that this contention is correct we feel that this particular question need not be met here since the evidence presented does not show that the Adjutant General, at any time, issued valid revocation orders. General Herr's telegram in effect merely set out his observations as to what had occurred in similar situations. From these he assumed that plaintiff's orders would be revoked, and his telegram merely embodied that assumption. Colonel Whipple's instructions to the plaintiff stating that his retirement orders would be revoked was, by the plaintiff's own testimony, conditioned on a final determination as to whether a suitable assignment could be found for him.

Plaintiff next asserts that if his orders were not revoked they never became effective because prior to their effective date, he had notified the War Department that he desired to withdraw his application for retirement. Defendant here again contends that once plaintiff's application had been accepted and orders issued, only appropriate action by the proper officials could cancel the retirement orders, and the plaintiff could not solely on his own initiative revoke those orders.

Plaintiff's request for retirement had been granted and appropriate and necessary steps had been taken by the War Department in order to effectuate the changes which necessarily result when someone steps aside. To permit the plaintiff to cancel those orders would be sanctioning a procedure which, to say the least, would be unorderly. In the absence of any authority to the contrary, and plaintiff states that his search has been unable to discover any, we cannot accept plaintiff's conclusion which would permit validly retired officers to void outstanding orders on their own initiative. Plaintiff requested that his retirement orders be revoked, and was informed that rescission of those orders must await a determination as to the existence of a suitable assignment. That determination was never made and no valid revocation orders were ever executed. Plaintiff's application for retirement had been granted, and we hold that the application once accepted and transmitted into orders could not be withdrawn or revoked without appropriate action by those in authority.

■ The final question is whether plaintiff's service as a cadet at the United States Military Academy may be counted in computing the 40 years of service required in order to be retired under the 1882 Act, supra. Until this dispute arose plaintiff considered himself to have had 42 years of service which included his four years at the academy. Now he asserts that the academy time does not count, leaving him with only 38 years of service which, he argues, means that he could not have been effectively retired under the 1882 Act. In support of this contention, he relies on Hartigan v. United States, 196 U.S. 169, 25 S. Ct. 204, 49 L.Ed. 434, which is not in point since it held that a cadet at the military academy was not a commissioned officer entitled to the protection of a general court martial. He also cites United States v.

680

Babbitt, 104 U.S. 767, 26 L.Ed. 921, which involved another statute and was decided prior to United States v. Morton, 112 U.S. 1, 5 S.Ct. 1, 2, 28 L.Ed. 613, which considered the 1882 Act and held that academy service was to be counted. The several opinions of the Attorney General to which the plaintiff makes reference are likewise inapposite.

Defendant relying on the Morton case, 1884, supra, argues that the time which the plaintiff spent at the military academy is to be included in computing his years of service for retirement purposes.

In the Morton case the Supreme Court held that time spent as a cadet at the military academy was to be regarded as "actual time of service in the army." This ruling of the Court was reiterated in United States v. Watson, 1889, 130 U.S. 80, 9 S.Ct. 430, 32 L.Ed. 852.

Credit for such service became a long standing controversy between those officers who were graduates of the academies and those who were not. This controversy was brought to the attention of Congress, and in 1912 the following statutory provision appeared:

"That hereafter the service of a cadet who may hereafter be appointed to the United States Military Academy or to the Naval Academy shall not be counted in computing for any purpose the length of service of any officer of the Army." [The Army Appropriation Act of August 24, 1912, 37 Stat. 569, 594.]

A similar provision was made in the Naval Appropriation Act of March 4, 1913, 37 Stat. 891, 34 U.S.C.A. § 230.

That it was the intention of Congress to eliminate what they found to be an inequity operating against those officers who were not graduates of the academies is shown quite clearly in the Report of the House Committee on Military Affairs, H. R. 270, 62d Congress, 2d Session, which after referring specifically to retirement stated in part as follows:

"These are additional discriminations against the civilian appointee who pays for his own preliminary educa-tion and in favor of the graduate of the Military Academy who is educated for his commission at the expense of the Government."

In United States v. Noce, 1925, 268 U.S. 613, 45 S.Ct. 610, 69 L.Ed. 1116, the Supreme Court recognized that prior to the Act of August 24, 1912, supra, as far as the Army was concerned and prior to the Act of March 4, 1913, supra, as far as the Navy was concerned, time at the academies was to be included when pay and/or retirement benefits were computed. This ruling was in line with the Morton and Watson cases, supra.

In 26 Comp.Gen. 387–390 (1946), the Comptroller General was questioned as to whether time spent at the naval academy could be considered in computing the length of service needed for retirement under the Act of February 21, 1946, 60 Stat. 27, 34 U.S.C.A. §§ 410a–410c, 419b. He answered that since the officers in question had attended the naval academy prior to the date of the Act of March 4, 1913 which prohibited the counting of academy service, such prohibition did not apply to them. We assume that the Comptroller General's decision would be the same in regard to an army officer whose service at the military academy occurred prior to the 1912 act, since that statute used the language "That *hereafter* the service of a cadet who may *hereafter* be appointed * * *." (Italics supplied.)

Under the authority of the Noce decision, supra, we conclude that prior to the 1912 and 1913 acts, the Morton case was the law and under that decision academy service did count in computing time spent in the Army and Navy. We further conclude that these statutory provisions were enacted by Congress to change the rule of the Morton case and that academy service subsequent to the passage of those acts is not to be "counted in computing for any purpose the length of service" of officers of the Army and Navy. See Gilmartin v. United States, 109 F.Supp. 255, 124 Ct.Cl. 434.

Plaintiff's service at the military academy transpired prior to 1912, i. e., 1899 to 1903, hence those years were correctly included

in computing his years of service under the 1882 act. The rule of the Morton case and the Comptroller General's decision have evidently been applied by the Army and Navy in computing "length of service" of those officers whose academy service occurred prior to 1912 and 1913. Those men who did accept academy appointments during that period, 1884 to 1912 or 1913, must be presumed to have accepted with the understanding that their academy time was to be counted in achieving retirement under the 1882 act. The plaintiff was in that group. His impression that his academy service was to count is supported by the fact that he applied for retirement under the 1882 act and included his four years of service at the academy in order to satisfy the 40-year requirement.

We conclude, therefore, that pursuant to the orders of October 2 and October 4, 1941, plaintiff's retirement under the Act of June 30, 1882, supra, was effective January 31, 1942, and that nothing was done by any one of proper authority to revoke or withdraw such orders. Plaintiff's petition is hereby dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.